**ISIDOR WEINSTEIN INVESTMENT CO., a corporation, and Ivan A. Anixter, Plaintiffs,**

v.

**The HEARST CORPORATION, the Chronicle Publishing Company, Inc., and San Francisco Newspaper Printing Company, Inc., corporations, Defendants.**

**Civ. No. 51069.**

United States District Court
N. D. California.
Aug. 29, 1969.

Broad, Busterud & Khourie, Michael N. Khourie, Royce H. Schulz, San Francisco, Cal., for plaintiffs.

Cooper, White & Cooper, James J. Brosnahan, W. J. Dowling, Jr., William J. Dowling, III, David L. Bacon, San Francisco, Cal., for defendants The Chronicle Publishing Co. and San Francisco Newspaper Printing Co., Inc.

McEnerney & Jacobs, Garret McEnerney, II, San Francisco, Cal., for defendants The Hearst Corp. and San Francisco Newspaper Printing Co., Inc.

## MEMORANDUM OPINION AND ORDER DISMISSING FIRST AMENDED COMPLAINT

GEORGE B. HARRIS, Chief Judge.

The first amended complaint sets out two causes of action. The first is on behalf of Isidor Weinstein Investment Co., the successor in interest of Weinstein Co., Inc. which appears to have been dissolved in 1968.

Weinstein owned six retail stores in San Francisco, and one each in Hayward and Sunnyvale; also, eight liquor, drug and sundries departments in discount stores located in Northern California.

Defendants' asserted antitrust violations embraced in the complaint are said to have forced cessation of the operations.

Ivan Anixter asserts a second cause of action wherein it is alleged that he lost executive salary as Weinstein's President as a result of the termination.

Defendants may be briefly described as the Chronicle Publishing Company, The Hearst Corporation, and San Francisco Newspaper Printing Company, all engaged in the publication of daily newspapers of general circulation in San Francisco.

The alleged offenses are combinations in restraint of trade and to monopolize

in violation of Sections 1 and 2 of the Sherman Act, and the formation of San Francisco Newspaper Printing Company in asserted violation of Section 7 of the Clayton Act.

Competition is alleged to have been suppressed or eliminated by market divisions, pooling of profits and fixing of circulation and advertising rates.

It is further asserted that readers of and advertisers in the San Francisco newspapers have been deprived of free and open competition, that the San Francisco News-Call Bulletin was eliminated as a competitor to the detriment of advertisers and that as a consequence advertising and circulation rates have been increased to arbitrary and non-competitive levels.

Plaintiffs claim treble damages.

Defendants urge dismissal on the following principal grounds:

(a) Plaintiff Investment Co., as assignee of a claim in favor of Weinstein Co., Inc. has no capacity to sue;

(b) Plaintiff Anixter lacks standing to complain of the alleged antitrust violations;

(c) As a matter of law, treble damages cannot be recovered for a violation of Section 7 of the Clayton Act;

The motion has been thoroughly briefed and argued orally on both sides.

I

The contention of defendants under Subdivision (a) is substantially as follows:

Under Rule 17(b) of the Federal Rules of Civil Procedure the capacity of a corporation to bring suit must be determined by the law of the State in which the corporation was organized. In this case the plaintiff was organized under the laws of California. Therefore, examination of the law of California is required to determine whether an assignee has the capacity to sue in an antitrust action of this kind.

Further, under the California law an action for penalty is not assignable as a general proposition; that it is clear that the California courts would consider the federal antitrust laws, calling as they do for treble damages, penal, and therefore not assignable.

Therefore the plaintiff has no capacity to sue.

Plaintiffs' position is as follows:

First, that assignability of the cause of action is a question of standing rather than capacity and that therefore Rule 17 (b), F.R.Civ.P. does not control; second, that the issue of assignability is to be determined by federal rather than state law and that California law is therefore not controlling.

The contention presented by defendants that "capacity to sue under Rule 17(b) F.R.Civ.P. is to be regarded as the equivalent of *standing*, necessarily involves two different concepts. The rule under consideration deals with *capacity* to bring an action and does not affect survivability or assignability of a cause of action. Cinnamon v. Abner A. Wolf, 215 F.Supp. 833, 836 (E.D.Mich.1963).

The underlying distinction is clearly preserved in DeFranco v. United States, 18 F.R.D. 156, 159 (S.D.Cal.1955):

"Capacity" raises only the question of whether the plaintiff is free from general disability such as infancy, insanity or some other form of incompetency, or if he sues in a representative capacity, whether he actually possesses the character in which he sues. Magee v. McNany, D.C.Pa.1950, 10 F.R.D. 5. Consequently Rule 17 is not in issue. Nor would incapacity preclude one from possessing a cause of action. "Cause of action" and "capacity to sue" are different concepts. "Capacity to sue", as stated, is plaintiff's personal right to come into court; his "cause of action" is his right to relief under the facts. Magee v. NcNany, supra; United States v. Association of Amer. R.R., D.C.Neb.1945, 4 F.R.D. 510.

The Court, after a careful review of the welter of authorities cited, together with the elaborate arguments, has concluded that Rule 17(b) F.R.Civ.P. is not an

issue, and that the weight of authority sustains the plaintiffs' contentions.

■ The suit at bar depends for its vitality upon the Statutes of the United States, and the Statutes of the State of California with respect to survivability or the assignment of causes of action have no application. Imperial Film Exchange v. General Film Co., 244 F. 985, 987 (N.Y.1915). Cf. D'Oench, Duhme & Co. v. Fed. Deposit Insurance Co., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) concurring opinion of Mr. Justice Jackson.

■ It is the prevailing view in the federal courts that a treble damage antitrust claim is assignable. United Copper Securities Co. v. Amalgamated Copper Co., 232 F. 574 (2nd Cir. 1916); Gerr v. Schering Corp., 256 F.Supp. 572 (S.D. N.Y.1966); Hicks v. Bekins Moving, 87 F.2d 583, 585 (9th Cir. 1937).

Accordingly, the motion to dismiss on this branch of the argument is denied.

## II

Defendants' contention that plaintiff Anixter does not have standing to sue is based upon its belief that he is not within the *target area* of the conspiracy. He cannot, it is argued, show that he is within that area of the economy which is endangered by a breakdown of competitive conditions in a particular industry. If he cannot make such a showing he is not injured "by reason" of anything forbidden in the antitrust laws. Conference of Studio Unions v. Loew's Inc., 193 F.2d 51, 54 (9th Cir. 1951).

In the years since the decision in the *Conference* case the scope of the target area has been considered frequently in this circuit. In Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358 (9th Cir. 1955), the court stated that concerning the target area or proximate causation the rule was that one who is only incidently injured by a violation of antitrust laws cannot recover against the violator. In determining such causation the court looked to "directness of injury" and intent to injure and cited cases hold-

ing that shareholders and officers of injured corporations as well as creditors and landlords lacked standing to sue because the injury was not direct. *Karseal,* supra, at 363. If that decision had remained unmodified the Court would be forced to conclude that Anixter was without the target area and failed therefore to state a cause of action.

The more recent cases indicate, however, that the target area has been broadened considerably since the *Karseal* decision. As the scope of proximate cause has expanded in the field of tort so has the scope of proximate cause expanded in the antitrust field. In Twentieth Century Fox Film Corp. v. Goldwyn, 328 F.2d 190 (9th Cir. 1964), the court discussed the *Karseal* decision at length noting that *Karseal* indicated that one was not in the target area unless "aimed at" by the conspirators. Supra, 328 F.2d at 220. The court went on to define the term "aimed at" in the following:

> But in using the words "aimed at" this court did not mean to imply that it must have been a purpose of the conspirators to injure the particular individual claiming damages. Rather, it was intended to express the view that the plaintiff must show that, whether or not then known to the conspirators, plaintiff's affected operation was actually in the area which it could reasonably be foreseen would be affected by the conspiracy.

In Harman v. Valley National Bank of Arizona, 339 F.2d 564 (9th Cir. 1964), appellees argued that a claim must be rejected under the line of cases cited in *Karseal,* holding that shareholders, creditors, directors and officers of corporations injured by monopolistic practices of competitors and other persons incidentally injured by a conspiracy cannot sue under Section 4 of the Clayton Act. The court, reversing on other grounds stated that:

> Certainly the limitation upon liability which appellees urge does not appear clearly from the language of section 4, and the Supreme Court has said that the courts "should not add require-

ments to burden the private litigant beyond what is specifically set forth by Congress * * *." (Citations omitted)

▮▮ It would appear therefore that the "target area" concept, if applied at all, requires only that the plaintiff show that he was actually in the area which it could reasonably be foreseen would be affected by the conspiracy. To withstand this motion therefore, plaintiff Anixter must allege only that defendant committed an antitrust violation and that defendant could have foreseeably realized that such violation could drive certain firms out of business resulting in loss of employment to a class of people of whom plaintiff is one. These allegations can be inferred from the complaint. Whether they can be proven is another matter, not before this Court. As the court stated in Data Digests, Inc. v. Standard and Poor's Corp., 43 F.R.D. 386 (S.D.N.Y.1967):

> Whatever the current status of the causation rules may be, however, it is clear under recent cases that the causation issue should not be resolved at this stage of the action. With the matter only at the pleading stage, (plaintiff) should not be deprived of the opportunity to develop his claim. He should not be foreclosed from presenting the facts upon which he relies.

Accordingly, the motion to dismiss on this branch of the argument is denied.

### III

▮ The defendants' next contention simply stated, is that as a matter of law treble damages cannot be recovered for a violation of Section 7 of the Clayton Act. An examination of the authorities on this subject discloses that there are divergent viewpoints. We feel that the better reasoned authorities sustain the contention advanced by the defendants. In Bailey's Bakery, Ltd. v. Continental Baking Company, 235 F.Supp. 705 (1964) District Judge Martin Pence stated:

> Since Clayton § 7 is concerned with the future monopolistic and restraining tendencies of corporate acquisition, i. e., probable (and hence not certain) future restraints on commerce, any damages claimed for prospective restraint of trade would be purely speculative, and a plaintiff cannot recover money damages for anticipated but unimplemented acts of restraint which may invade its interests. While Clayton § 7 permits private injunctive and divestiture actions in merger situations which may result in the proscribed restraints or monopolies, nevertheless, no private action for treble damages accrues from a Clayton § 7 acquisition. Count I fails to state a cause of action.

The conclusion reached by Judge Pence is predicated upon a penetrating analysis of the legislative background and committee reports pertaining to the said section.

As further observed, Section 7 of the Clayton Act supplemented the Sherman Act and was intended primarily to arrest apprehended relationships before those relationships could work their evil. United States v. E. I. DuPont de Nemours & Co., 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957).

In Gottesman v. General Motors Corporation, 221 F.Supp. 488 (S.D.N.Y.1963), District Judge Metzner pointed out the underlying distinction which applies in the case at bar:

> It seems too obvious to require discussion that facts on which a finding of a violation of the Clayton Act is based are insufficient to support a finding of a violation of the Sherman Act, since the Clayton Act was intended to catch potential Sherman Act violations in their incipiency. "Incipiency" denotes "any time when the acquisition threatens to ripen into a prohibited effect." (Citations omitted)

Cf. Highland Supply Corp. v. Reynolds Metals Co., 327 F.2d 725, 728, (footnote 3) (8th Cir. 1964) ; 245 F.Supp. 510, 514 (E.D.Mo.1965).

We are not disposed in view of the alleged facts in the case at bar to follow

the reasoning in the cases relied upon by plaintiff.[1]

The motion to dismiss in this regard must be and is sustained. Leave to amend may be granted if plaintiff is so advised.[2]

## IV

 Defendants also urge dismissal on the premises that the allegations relating to interstate commerce are defective; that causation has not been properly pleaded; and that the demand for judgment is insufficient.

These grounds are clearly without merit and accordingly, as to them the motion to dismiss is hereby denied.

---

1. Dailey v. Quality School Plan, Inc., 380 F.2d 484, 488 (5th Cir. 1967); Julius M. Ames Co. v. Bostitch, Inc., 240 F. Supp. 521, 523–525 (S.D.N.Y.1965).

