**Stephen Herbert PORTER, Bankrupt, Donald M. Drake, Trustee, Plaintiff,**

v.

**HOUSEHOLD FINANCE CORPORATION OF COLUMBUS, Defendant.**

Civ. A. No. C 2 74–47.

United States District Court, S. D. Ohio, E. D.

Nov. 25, 1974.

338

Ruth Freed, Columbus, Ohio, for bankrupt.

Denis J. Murphy, Craig M. Stewart, Patchen, Murphy & Allison, Columbus, Ohio, for plaintiff.

Robert W. Werth, John C. Elam, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for defendant.

## OPINION AND ORDER

KINNEARY, Chief Judge.

This is an action under the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq., to recover damages for failure to make disclosures required by the Act.[1]

This matter is before the Court on the cross-motions of the parties for summary judgment.

Plaintiff Donald M. Drake is the trustee of the bankruptcy estate of Stephen Herbert Porter. Drake will hereinafter be referred to as the "Trustee." Porter will hereinafter be referred to as the "Bankrupt."

Defendant Household Finance Corporation of Columbus will hereinafter be referred to as "HFC."

The undisputed facts are as follows.[2] On June 15, 1973, the bankrupt, Stephen H. Porter, and his wife borrowed $770.18 from HFC. A truth-in-lending disclosure statement was contemporaneously executed. The statement was dated 06/15/73 and showed:

| | |
|---|---|
| finance charge | $ 225.68 |
| amount financed | 783.14 |
| creditors life charge | 12.96 |
| principal amount of loan | 770.18 |
| annual percentage rate | 23.788% |

Porter signed a printed request for credit life insurance coverage. The printed form stated that HFC does not require credit life insurance. Porter's signature requesting credit life insurance is within the disclosure box dated 06/15/73; but no date appears proximate to the signature. The insurance was for the term of the loan.

There are no material disputed facts. Three legal issues are presented: (1) Does the bankrupt's cause of action against HFC pass to the trustee in bankruptcy under § 70a of the Bankruptcy Act?; (2) Did Porter give "specific dated and separately signed affirmative written indication" of his desire for credit life insurance coverage?;

1. This action was originally filed in the bankruptcy division of this Court. On February 2, 1974, it was transferred to the civil docket of the United States District Court in accordance with the provisions of Rule 915(b) of the Rules of Bankruptcy Procedure.

2. On June 21, 1974, defendant and plaintiff entered into a stipulation of fact which is the basis of the statement of facts in the text.

and (3) Is a lender (HFC) obligated to disclose the term of credit life insurance on the truth-in-lending disclosure statement?

## I

Section 70a of the Bankruptcy Act provides that the trustee of the bankrupt's estate is vested with the title of the bankrupt to "all of the following kinds of property":

(3) powers which he might have exercised for his own benefit, but not those which he might have exercised solely for some other person; . . .

(5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered . . . ..

(6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property . . . . .

■ Under the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq., a creditor is required to make disclosures to a prospective debtor about the cost of credit. The Act's purpose is to require uniform, mandatory disclosure of credit information so that consumers can make the best informed decision on the use of credit. If the creditor fails to make all of the disclosures required by the Act, the debtor may sue his creditor and recover a civil penalty of twice the amount of the finance charge. 15 U.S.C. § 1640.[3]

Plaintiff contends that the bankrupt's cause of action under 15 U.S.C. § 1640 passes to him under § 70a(3), (5), (6) of the Bankruptcy Act as (3) a "power", (5) "[a right] of action . . . which might have been levied upon and sold under judicial process" and/or (6)

a right of action "arising upon contracts, or usury."

■■ The language of § 70a must be construed in the light of the twin purposes of the Bankruptcy Act: First, to distribute the bankrupt's assets among his creditors; and, Second, to give the bankrupt a fresh start. Kokoszka v. Belford, 417 U.S. 642, at p. 646, 94 S.Ct. 2431, at p. 2434, 41 L.Ed.2d 374 (1974); Lines v. Frederick, 400 U.S. 18, 20, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); Burlingham v. Crouse, 228 U.S. 459, 473, 33 S.Ct. 564, 57 L.Ed. 920 (1913). Assets which are rooted in a bankrupt's past financial plight are generally distributable to his creditors, while assets which accrue in or look to his economic rehabilitation in the future are exempt and do not pass under § 70a.

■■ With these guidelines in mind the Court turns to the construction of § 70a. Plaintiff first asserts that the cause of action under the Truth-in-Lending Act is a "power" within the meaning of § 70a(3). Included within the term are powers known at common law as well as those arising under statutes. 4A Collier on Bankruptcy ¶ 70.13, p. 123 (14th ed.). A power is "an ability on the part of a person to produce a change in a given legal relation by doing or not doing a given legal act." Restatement, Second, Agency § 6. Restatement, Property § 3. Plaintiff does not suggest how the Truth-in-Lending Act creates a power in a debtor to change his legal relation to his creditor. Plaintiff cites no authority for his position.

■ By its clear terms the Truth-in-Lending Act provides for a cause of action in favor of the debtor when his creditor fails to comply with the Act, but it does not create a power in the debtor vis-à-vis his creditor. Accordingly, the Court holds that bankrupt's statutorily created interest does not pass to the trustee as a power under § 70a(3) of the Bankruptcy Act.

3. The civil penalty may not be less than $100.00 nor greater than $1,000.00.

Property, including rights of action, passes to the trustee under § 70a(5) if either:

 (1) The bankrupt could have transferred it by any means; or

 (2) It might have been levied upon and sold under judicial process against the bankrupt, or otherwise seized, impounded, or sequestered.

Defendant argues that a debtor's right of action under the Truth-in-Lending Act cannot be transferred because the Act imposes a civil penalty, and actions for penalties do not survive and cannot be assigned.

The Truth-in-Lending Act establishes liquidated damages of twice the finance charge for a creditor's failure to disclose required information to the debtor. Congress labeled this damage a "civil penalty." Consumer Credit Protection Act, House Report No. 1040, 1968 U.S. Code Cong. & Admin.News pp. 1962, 1976, 1987. Mourning v. Family Publications Service, Inc., 411 U.S. 356, 361, 376, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); Eovaldi v. First National Bank of Chicago, 57 F.R.D. 545, 548 (N.D.Ill. 1972). The Act also creates criminal liability for a creditor who willfully and knowingly gives false or inaccurate information or who willfully and knowingly fails to provide information he is required to disclose. 15 U.S.C. § 1611.

■■ The federal rule is that suits for penalties and forfeitures do not survive the death of either a plaintiff or a defendant. Schreiber v. Sharpless, 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65 (1884).[4] Penal statutes are those that impose a punishment for crime. Actions for damages to a litigant's property are not penal even though they may be so labeled. The United States Supreme Court articulated the distinction between penal and damage actions in Huntington

v. Attrill, 146 U.S. 657, 667–669, 13 S. Ct. 224, 227–228, 36 L.Ed. 1123 (1892):

Strictly and primarily, they [penal statutes and penalties] denote punishment, whether corporal or pecuniary, imposed and enforced by the state, for a crime or offense against its laws. [Citations omitted.] But they are commonly used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered. They are so elastic in meaning as even to be familiarly applied to cases of private contracts, wholly independent of statutes, as when we speak of the "penal sum" or "penalty" of a bond. . . .

Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal.

\* \* \* \* \* \*

The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual, according to the familiar classification of Blackstone: "Wrongs are divisible into two sorts of species: *private wrongs* and *public wrongs*. The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals, and are thereupon frequently termed 'civil injuries:' the latter are a breach and violation of public rights and duties, which affect the whole community, considered as a community, and are

---

4. The reason given for the decision in *Schreiber* was that "[a]t common law actions on penal statutes do not survive [citation omitted], and there is no act of Congress which establishes any other rule in respect to actions on the penal statutes of the United States."

distinguished by the harsher appellation of *'crimes* and *misdemeanors.'* "

[Emphasis in original.] See also, *Id.* at 673–674, 13 S.Ct. 224.

Thus, a liability is not penal merely because greater than "actual" damages are imposed. The true test is whether the wrong to be remedied or punished is primarily to an individual or to the State.

■ Anti-trust treble damage actions have been held to create a civil remedy and not to impose a penalty.[5] *See, e. g.,* Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 397, 27 S.Ct. 65, 51 L.Ed. 241 (1906); Rogers v. Douglas Tobacco Board of Trade, 244 F.2d 471, 483 (5th Cir. 1957); Barnes Coal Corp. v. Retail Coal Merchants Association, 128 F.2d 645, 649 (4th Cir. 1942); Hicks v. Bekins Moving & Storage Co., 87 F.2d 583, 585 (9th Cir. 1937); Moore v. Backus, 78 F.2d 571, 575–576 (7th Cir. 1935); Sullivan v. Associated Billposters and Distributors, 6 F.2d 1000, 1009 (2d Cir. 1925); Isidor Weinstein Investment Co. v. Hearst Corp., 303 F. Supp. 646, 649 (N.D.Calif.1969); Gerr v. Schering Corp., 256 F.Supp. 572, 573–574 (S.D.N.Y.1966). Similarly, patent treble damage actions, *e. g.,* Cheramie v. Orgeron, 434 F.2d 721, 723 (5th Cir. 1970); Armstrong v. Emerson Radio & Phonograph Corp., 132 F.Supp. 176, 179 (S.D.N.Y.1955); Activated Sludge v. Sanitary District of Chicago, 64 F.Supp. 25, 35–36 (N.D.Ill.1946); see, Pierce v. Allen B. Du Mont Laboratories, Inc., 297 F.2d 323, 324 (3d Cir. 1961), tax 50% civil fraud penalty actions, Reimer's Estate v. Commissioner of Internal Revenue, 180 F.2d 159, 160 (6th Cir. 1950); Kahr v. Commissioner of Internal Revenue, 414 F.2d 621 (2d Cir. 1969); Rau's Estate v. Commissioner of Internal Revenue, 301 F.2d 51, 55–56 (9th Cir.), cert. denied, 371 U.S. 823, 83 S.Ct. 41, 9 L.Ed.2d 62 (1962); Kirk v. Commissioner of Internal Revenue, 179 F.2d 619 (1st Cir. 1950), and securities fraud actions, Western Auto Supply Co. v. Gamble-Skogmo, Inc., 231 F.Supp. 456 (D.Minn.1964); Derdiarian v. Futterman Corp., 223 F.Supp. 265, 270–271 (S.D.N.Y.1963); International Ladies' Garment Workers' Union v. Shields, 209 F.Supp. 145, 149–150 (S.D. N.Y.1962); Mills v. Sarjem Corporation, 133 F.Supp. 753, 761–762 (D.N.J.1955), have been held not to be penal.[6] The above actions survive and are assignable.

A contra line of authority exists in the construction given the Emergency Price Control Act of 1942. The Act created a treble damage remedy in favor of the purchase of goods priced in violation of the maximum permitted by the law. The Sixth Circuit Court of Appeals and other courts held that the primary purpose of the Act was to protect the public during a war emergency, and that the liability imposed was a penalty. Bowles v. Farmers National Bank, 147 F.2d 425, 428–430 (6th Cir. 1945); Bishop v. Rosin, 69 F.Supp. 915 (E.D.Mich.1946); Strickland v. Sellers, 78 F.Supp. 274, 276–277 (N.D.Tex.1948); Porter v. Elliott, 69 F.Supp. 652, 654–656 (E.D.Pa. 1946). The Emergency Price Control Act is distinguishable in its purpose and effect from the Truth-in-Lending Act. The former legislated an extraordinary liability imposed only for the duration of an emergency. It sought to protect the public from the perils of wartime inflation. The latter seeks to provide individual debtors with sufficient information to make credit decisions. It is ongoing legislation designed to achieve long-term social policy goals.

---

5. Anti-trust treble damage actions pass to the trustee in bankruptcy under § 70a(5). Vance v. Safeway Stores, 239 F.2d 144 (10th Cir. 1956), reversed on other grounds, 355 U.S. 389, 78 S.Ct. 358, 2 L.Ed.2d 350 (1958). Also state created treble damage actions for gambling losses pass to the trustee. In Matter of Gentile, 123 F.Supp. 723, 727 (W.D.Ky.1954).

6. Additionally, a right of action is not penal because it establishes a minimum recovery which does not reflect actual damages. Brady v. Daly, 175 U.S. 148, 154–157, 20 S. Ct. 62, 44 L.Ed. 109 (1899). (Copyright Act liability of $100 for first and $50 for subsequent infringements.)

In its purpose, Truth-in-Lending civil liability is not unlike patent, anti-trust and securities act liability. As with most modern social welfare legislation, the statute has a dual purpose of remedying harm to the individual and deterring socially inimical business practices. Derdiarian v. Futterman Corp., 223 F.Supp. at 271, *supra*.[7] See also, Brady v. Daly, 175 U.S. 148, 157, 20 S. Ct. 62, 44 L.Ed. 109 (1899); Armstrong v. Emerson Radio & Phonograph Corp., 132 F.Supp. at 179, *supra*. The deterrent effect of a statute which is designed to encourage the victims of unlawful acts to bring suit by creating cumulative damages for the injury to their property or monetary interests does not make the cause of action penal. *Cf.* Sullivan v. Associated Billposters & Distributors, 6 F.2d at 1009, *supra*.

A debtor obtains money in return for his promise to repay the principal sum over a term and to pay interest on the principal sum. The contract the debtor enters with his creditor directly affects his property or monetary interests. The Truth-in-Lending Act gives a uniform definition to principal and interest. All mandatory credit charges are considered interest. The creditor is required to disclose these credit costs to the debtor and to state them as an annual percentage rate of interest (APR).

In the present action plaintiff alleges that the APR was misstated because HFC did not include mandatory credit charges as interest when computing the APR. If the allegations are true, the debtor's monetary interests were adversely affected in that the cost of credit was greater than represented. The misrepresentation of the cost of credit may have prevented the debtor from obtaining cheaper credit after comparison shopping. The debtor's actual damages are difficult to ascertain. Nonetheless, the creditor has injured the debtor in his monetary interests by misrepresenting the cost of credit. And the Truth-in-Lending Act avoids the difficulty in calculating damages by providing for liquidated damages of twice the amount of the finance charge.[8]

Although accumulated, the damage is a remedy for injury to the debtor's monetary interests. The cause of action accrues to the person injured in his property interest, not to a third person[9] or the State. The civil cause of action is not a penalty imposed by the State for a crime or offense against its laws. See, Huntington v. Attrill, 146 U.S. at 667, 13 S.Ct. 224, *supra*. In fact, the Truth-in-Lending Act has a separate penal provision imposing criminal liability for willful and knowing violations. 15 U.S. C. § 1611.

This Court recognizes that the Truth-in-Lending liability under § 1640 does not fall neatly within the common law categories of either a penalty or a remedial action for injury to property or monetary interests. Many developments have occurred in both case and statutory law since the time of the development of the common law governing the survival of actions for penalties. Social welfare legislation of the kind under review was then unknown. Therefore, the Court must determine whether the primary purpose of the Act is more like a penalty or a remedial action at common law. The Court concludes from the above discussion that the primary purpose of § 1640 is remedial. The ac-

---

7. The Court in Derdiarian said:
 The use of labels such as "penal" or "remedial" is, of course, unsatisfactory unless it is recognized as a shorthand way of expressing relevant considerations. Quite clearly the statutes relied on here are meant to deter bad practices in the sale of securities, as well as to afford compensation to persons injured thereby.
 Id. at 271.

8. In any event the damages may not be less than $100 nor greater than $1,000. Costs may be assessed and a reasonable attorney's fee awarded.

9. The Truth-in-Lending Act exempts advertising from the application of civil liability to avoid creating a penalty collectible by a third person who has not suffered actual damages. *See,* Consumer Credit Protection Act, House Report No. 1040, 1968 U.S.Code Cong. & Admin.News, pp. 1962, 1976.

cumulative damage is meant to encourage debtors to seek their remedy under the Act, and it liquidates an uncertain damage. It is not primarily penal in the sense of a punishment imposed by the State for wrongdoing.[10]

 Defendant's assertion that the bankrupt's Truth-in-Lending cause of action does not pass to the trustee under § 70 is based on the argument that the cause of action is penal and thus not transferrable. The Court's determination that the cause of action is not penal is not dispositive of the question of survival and assignment. When a federal statute is silent about survivability, it survives or not according to the principles of the common law. Bowles v. Farmers National Bank, 147 F.2d 425, 430 (6th Cir. 1945); Heikkila v. Barber, 308 F.2d 558, 561 (9th Cir. 1962); Sullivan v. Associated Billposters & Distributors, 6 F.2d at 1004, *supra*. *See*, Martin v. Baltimore & Ohio R.R., 151 U.S. 673, 14 S.Ct. 533, 38 L.Ed. 311 (1894). At common law a chose in action arising ex contractu survived, while a cause of action ex delicto did not.[11] Sullivan v. Associated Billposters & Distributors, 6 F.2d at 1004, *supra*. 6 Am. Jur.2d Assignments § 27, p. 212. Over the centuries the rationale for the common law rule has been lost. It may have arisen from early notions of tort as an outgrowth of criminal wrong. Derdiarian v. Futterman Corp., 223 F.Supp. 265, 267–268 (S.D.N.Y.1963). If the wrongdoer died, he could no longer be punished. If the victim died, he could no longer be made whole. Another reason advanced to support the rule is the fear that a market in lawsuits would encourage champerty and maintenance while furthering no positive social ends. *See*, 6 Am.Jur.2d Assignments § 27, p. 212. E.g., In re Schmelzer, 350 F.Supp. 429, 437 (S.D.Ohio E.D.1972).[12]

The common law is not moribund. Its genius is that it permits the traditions of the past to be adapted to the circumstances of the present. The inherent adaptability of the common law was well-stated by the Fourth Circuit Court of Appeals in Barnes Coal Corp. v. Retail Coal Merchants Association, 128 F.2d 645, 648 (4th Cir. 1942):

While there might be some doubt as to this [survivability of a Sherman Act treble damage cause of action] were we to look only to the ancient decisions, we think that the rule is to be determined, not merely by a consideration of the state of the common law at the time of the enactment of the statute de bonis asporatis in the reign of Edward III, or even by a consideration of the common law at the time of the American Revolution, but in the light of its subsequent development and the decisions interpreting it. It must be remembered, in this connection, that the common law is not a static but a dynamic and growing thing. Its rules arise from the application of reason to the changing conditions of society. It inheres in the life of society, not in the decisions interpreting that life; and, while decisions are looked to as evidence of the rules, they are not to be construed as limitations upon the growth of the law but as landmarks evidencing its devel-

10. In a given case the "actual" provable damages may be much less than the recoverable statutory damage. To this extent the remedy is "penal." But this is not in the sense of the term which would result in a holding of nontransferrability. See, Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, *supra*.

11. An action is transferrable if it survives or is assignable. The test of assignability is generally assumed to be whether it survives. 6 Am.Jur.2d Assignments, § 30, p. 214; 6 C.J.S. Assignments § 30, p. 1079. *E. g.*, Strickland v. Sellers, 78 F.Supp. 274, 276 (N.D.Tex.1948).

12. *In re Schmelzer* concerned the transferrability under § 70a of a tort claim for personal injuries. Judge Rubin rejected the trustee's claim, holding in part:

This Court, if it allowed such claims to pass freely in these ways, could be encouraging a market in the pain and suffering of unfortunate persons and the law neither does, nor should it, encourage so callous and barbaric a practice. [Citations omitted.] *Id.* at 437.

opment. [Citations omitted.] See also, Kirks v. Commissioner, 179 F.2d 619, 627 (1st Cir. 1950); Derdiarian v. Futterman Corp., 223 F.Supp. at 269, *supra*.

The modern common law rule of survivability is that tort actions for personal wrongs (e.g., slander, libel and malicious prosecution) do not survive, while actions affecting property rights or monetary interests do survive. Barnes Coal Corp. v. Retail Coal Merchants Association, 128 F.2d at 649, *supra*; Sullivan v. Associated Billposters & Distributors, 6 F.2d at 1004–1005, *supra*. Even causes of actions for some "personal" torts have been held to survive. E.g., Van Beeck v. Sabine Towing Co., Inc., 300 U.S. 342, 347–351, 57 S.Ct. 452, 81 L.Ed. 685 (1937) (Held Merchant Marine Act wrongful death cause of action survived sailor's mother's death.) [13]

■ A creditor's failure to comply with the Truth-in-Lending Act gives rise to a cause of action for tortious interference with property rights or monetary interests. Such actions survive and are assignable at common law. The cause of action is transferrable, and therefore it passes to the trustee under the provisions of § 70a(5).

■ The Truth-in-Lending cause of action also passes under § 70a(5) as a right of action "which might have been levied upon and sold under judicial process against [the bankrupt], or otherwise seized, impounded, or sequestered . . . ." Section 2333.01, Ohio Revised Code provides that any interest a judgment debtor has in a chose in action ". . . shall be subject to the payment of the judgment by action." A chose in action "includes the right to recover pecuniary damages for a wrong inflicted either upon the person or property. It embraces demands arising out of tort, as well as causes of action originating in the breach of contract." Cincinnati v. Hafer, 49 Ohio St. 60, 65, 30

N.E. 197, 198 (1892). *See*, Bushnell v. Kennedy, 76 U.S. 387, 390, 19 L.Ed. 736 (1869). Actions based on tortious injury to property are subject to process under § 2333.01, Ohio Revised Code. *See*, Cincinnati v. Hafer, 49 Ohio St. at 66–67, 30 N.E. 197, 199, *supra*. The Supreme Court of Ohio recognized in *Hafer* the justice of subjecting claims for the tortious injury to property to the claims of judgment creditors:

> A debtor's real and personal property, including pecuniary demands against others for injury thereto, whereby such property is diminished in value, justly constitutes a fund for the payment of his debts . . . .

Failure to disclose information about a credit transaction as required by law adversely affects the debtor's property to the detriment of all of his other creditors. For this reason, the purposes of the Truth-in-Lending Act and the Bankruptcy Act are best effectuated by permitting the debtor's creditors recourse to the statutory claim.

Although resolution of the question is not necessary to a decision in the present case, the Court notes that the Truth-in-Lending cause of action may well pass to the trustee under § 70a(6) which gives the trustee title to "rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to [the bankrupt's] property. . . ." There is no controlling case law construing the above quoted language. The Truth-in-Lending cause of action does arise from a credit contract. In fact, the Act determines, in part, the nature of the contract and the manner in which it is entered. If the creditor in entering the contract fails to comply with the Act, a cause of action exists in favor of the debtor.

The cause of action which is created is very similar to a usury action. Both laws attempt to protect debtors from overreaching by creditors. Each re-

13. Justice Cardozo asserted that the Merchant Marine Act wrongful death action was "a new property right or interest" which consequently survived. *Id.* at 349, 57 S.Ct. at 455.

quires a true statement of the credit charges. The Truth-in-Lending Act may be but a sub-type of usury law.

## II

The Court now turns to the merits of the complaint. 15 U.S.C. § 1605(b) requires credit life insurance charges to be included in the finance charge unless the creditor discloses in writing that such insurance is not a factor in the approval of the loan and the debtor gives "specific affirmative written indication of his desire" to be covered by credit life insurance. The Federal Reserve Board has promulgated Regulation Z to implement § 1605(b):

> Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:
>
> . . . . . .
>
> (5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless
>
> (i) the insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and
>
> (ii) any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

Plaintiff argues that the borrower's signature must be specifically dated, i.e.,

a date must appear next to the signature. Plaintiff relies principally upon a decision of Referee Dilenschneider that the borrower's signature must be specifically dated on the insurance request; and that a date at the top of the disclosure form is not sufficiently "specific" as required by Regulation Z.[14] In re Warren, # 60657 (Bankruptcy Court, S.D. Ohio January 16, 1974).

 Grammatically, in Regulation Z the adjective "specific" modifies the phrase "dated and separately signed affirmative written indication" of a desire to have credit life insurance coverage. Thus, the regulation requires a dated indication of the borrower's desire to have credit life insurance coverage *and* a signed affirmative indication of his desire for insurance coverage. The clear language of the regulation requires the borrower's request for credit life to be dated. To avoid litigation and any possible misunderstanding by the consumer the date should be on the same line as, and immediately next to, the borrower's signature. However, the disclosure statement was dated 6/15/73; and the box containing the disclosure statement also included Porter's signed indication of a desire for credit life insurance coverage. Although this practice might lead to confusion, there is no factual dispute in this case. The loan was made and the credit life indication signed on June 15, 1973, and that date appeared on the disclosure statement containing Porter's written request for credit life.

The Court holds that Porter's signed written indication was in fact dated within the meaning of Regulation Z.

## III

 The disclosure statement does not state the term of Porter's credit life insurance.[15] Plaintiff argues that a Federal Reserve Board Regulation, 12

---

14. The Federal Reserve Board has published a sample form disclosure statement which complies with Regulation Z. The sample form is dated at the top of the disclosure statement and again at the signature line for credit life insurance.

15. The term was disclosed in an insurance certificate delivered to Porter on June 15, 1973.

**346**

C.F.R. § 226.402 requires the term to be stated in the disclosure statement. Section 226.402 provides in relevant part:

. . . if the cost of insurance is not required to be included in the finance charge, the cost to be disclosed need only be the cost of premiums for the term of the initial policy or policies written in connection with the transaction, accompanied by a statement of the type of insurance and the term thereof.

This language was interpreted in Philbeck v. Timmers Chevrolet, Inc., 361 F. Supp. 1255 (N.D.Ga.1973) to require disclosure of the term even when the term of the credit life was the same as the term of the loan. Since *Philbeck* was decided in the District Court, the Chief of the Truth-in-Lending Section of the Federal Reserve Board has written a staff letter stating that § 226.402 was not intended to apply to credit life policies written for the term of the loan, and that § 226.402 was meant to apply only when the term of the insurance was less than the term of the credit. The Fifth Circuit Court of Appeals adopted this interpretation and overruled the District Court in *Philbeck*, 499 F.2d 971 (5th Cir. 1974).

Full disclosure is accomplished when the full cost of credit life for the term of the loan is revealed in the disclosure statement. Although a preferable practice, the disclosure statement need not state the term of the credit life when it is the same as the term of the loan.

The Court holds that the bankrupt was advised of the term of the credit life insurance; and, further, that the term of the credit life insurance need not be set out in the disclosure statement if it is for the term of the loan. Philbeck v. Timmers Chevrolet, Inc., *supra*.

Whereupon, the Court holds that plaintiff's motion is without merit, and therefore it is denied. The Court further holds that defendant's motion is meritorious; and therefore it is granted.

This action is hereby dismissed.