**Denis J. MURPHY, Trustee, Plaintiff,**

v.

**HOUSEHOLD FINANCE CORPORATION,**
**Defendant.**

**Civ. A. No. C–2–75–284.**

United States District Court,
S. D. Ohio, E. D.

June 14, 1976.

Denis J. Murphy, Columbus, Ohio, for plaintiff.

Robert W. Werth, Columbus, Ohio, for defendant.

MEMORANDUM AND ORDER

DUNCAN, District Judge.

This civil action was brought pursuant to Part I of the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.*, commonly known as the Truth in Lending Act, and Federal Reserve Regulation Z, 12 C.F.R. § 226.1 et seq. Plaintiff as trustee of the estate of Randy Lee and Carol Ann Westbrook seeks to recover statutory damages, attorney fees and costs for defendant's alleged violations of the Act and Regulation Z. Jurisdiction is asserted under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337. Plaintiff has filed a motion for summary judgment

and for purposes of this motion the parties have entered into the following stipulations:

1. On April 19, 1974 Randy Lee Westbrook and Carol Ann Westbrook filed a voluntary bankruptcy petition in the Bankruptcy Court for the Southern District of Ohio, Eastern Division, and were adjudicated bankrupts.

2. The plaintiff, Denis J. Murphy, Trustee, is the duly appointed, authorized and acting trustee in bankruptcy for Randy Lee and Carol Ann Westbrook (the "bankrupts").

3. On June 26, 1973 the defendant, Household Finance Corporation (hereafter "HFC") entered into a consumer credit transaction (hereafter "the transaction") with the bankrupts whereby the bankrupts obtained a loan from HFC in the principal amount of $894.91.

4. Attached hereto and made a part hereof as Exhibit A is a true "Borrower's Copy" of the "Combined Note and Disclosures" form (hereafter "disclosure statement") which was delivered by HFC to the bankrupts on June 26, 1973 prior to consummation of the transaction.

5. On the disclosure statement the following items were illegible: the "finance charge", the "amount financed", the "number of payments", the "total of payments" and the "date of transaction".

6. Solely with respect to those facts contained in paragraph 4 above, HFC specifically waives the bona fide error defense contained in paragraph 9 of its answer filed herein and the other affirmative defenses which it raised in paragraphs 7 and 10 of its answer filed herein.

7. By reason of the foregoing waiver of defenses, the facts contained in paragraph 5 above constitute a violation of Regulation Z, Section 226.6(a), 12 C.F.R. 226.1 et seq.

8. Plaintiff is entitled to judgment against HFC in an amount equal to twice the finance charge ($487.60) plus court costs and reasonable attorney's fees, if plaintiff has the right to bring a Truth in Lending cause of action against HFC as Trustee for the bankrupts pursuant to Section 70a of the Bankruptcy Act (11 U.S.C. Section 110).

By reason of the above stipulation, the sole issue before the Court is whether a trustee in bankruptcy has standing to bring a Truth in Lending cause of action of the bankrupts. Does, in other words, a bankrupt's cause of action under the Truth in Lending Act pass to the trustee in bankruptcy under the terms of § 70a of the Bankruptcy Act, 11 U.S.C. § 110(a)? While this legal question is of relatively recent origin, the Court is not writing upon the proverbial "clean slate." This precise issue has previously been decided by another judge of this Court in *Porter v. Household Finance Corporation,* 385 F.Supp. 336 (S.D. Ohio 1974). In *Porter* the Court analyzed three sections of section 70a in light of the twin purposes of the Bankruptcy Act: to distribute the bankrupt's assets among his creditors and to give the bankrupt a fresh start in his economic life. The Court first considered § 70a(3) whereby the trustee is vested with the title of the bankrupt to

> powers which he might have exercised for his own benefit, but not those which he might have exercised solely for some other person; . . .

Finding that the Truth in Lending Act did not create a power in the debtor vis-a-vis his creditor, the Court concluded that the bankrupt's statutorily created interest did not pass to the trustee as a power under § 70a(3) of the Bankruptcy Act.

The Court next considered the passing of title to the trustee of

> property, including rights of action, which prior to the filing of the petition he [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: . . .

§ 70a(5) of the Bankruptcy Act. Property passes under this subsection if either one of two requirements are met:

> (1) that the bankrupt could have transferred it by any means; or

(2) that the property could have been levied upon and sold under judicial process, or otherwise seized, impounded, or sequestered.

In concluding that a right of action under the Truth in Lending Act met the test of transferability, the Court engaged in a two-part analysis. First it explored the nature of the damages authorized by the Act. At that time the penalty section, 15 U.S.C. § 1640(a), provided for liquidated damages of twice the amount of the finance charge.[1] However, this provision has subsequently been amended to provide for actual damages sustained as a result of the failure to disclose, in addition to the twice the finance charge.[2] See Pub.L.No.93–495, § 408, 88 Stat. 1500 set out at 1974 *U.S.Code Cong. & Admin.News* pp. 1724, 1746, amending 15 U.S.C. § 1640(a). § 408(e) provides that this amendment

shall apply in determining the liability of any person under chapter 2 or 4 of the Truth in Lending Act unless prior to the date of enactment of this Act [Oct. 28, 1974] such liability has been determined by final judgment of a court of competent jurisdiction and no further review of such judgment may be had by appeal or otherwise.

1974 *U.S.Code Cong. & Admin.News* pp. 1746–47.

The *Porter* court rejected defendant's argument that the Act imposed a civil penalty which was not transferable because of the federal rules that penalties do not survive and cannot be assigned. It did so by strictly construing the word "penalty" to denote a penal action in the sense of criminal or public wrongs in contrast to private wrongs for which a civil for future is imposed. This distinction was articulated by the Supreme Court of the United States in *Huntington v. Attrill,* 146 U.S. 657, 667–669, 13 S.Ct. 224, 227, 36 L.Ed. 1123 (1892):

Strictly and primarily, they [penal statutes and penalties] denote punishment, whether corporal or pecuniary, imposed and enforced by the state, for a crime or offense against its laws. . . . But they are commonly used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered. They are so elastic in meaning as even to be familiarly applied to cases

---

1. 15 U.S.C. § 1640(a) as enacted in 1968 provided:

(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

2. 15 U.S.C. § 1640(a) as amended provides that:

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A) in the case of an individual action twice the amount of any finance charge in connection with the transaction, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or

(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $100,000 or 1 per centum of the net worth of the creditor; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

of private contracts, wholly independent of statutes, as when we speak of the "penal sum" or "penalty" of a bond.

Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal.

The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual, according to the familiar classification of Blackstone: "Wrongs are divisible into two sorts of species: *private wrongs* and *public wrongs*. The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals, and are thereupon frequently termed 'civil injuries;' the latter are a breach and violation of public rights and duties, which affect the whole community, considered as a community, and are distinguished by the harsher appellation of *'crimes* and *misdemeanors.'*" (Emphasis in original.)

The Court then proceeded to discuss at length why it believed the penalty imposed by the Truth in Lending Act was primarily remedial and not penal in nature. See *Porter v. Household Finance Corporation,* 385 F.Supp. at 341–343.

■ This Court believes that the distinction drawn by the Court in *Porter* between causes of action which are, strictly speaking, penal in nature and those which are remedial, is correct. The 1974 amendment adding an award of actual damages to the civil penalty provision further supports the conclusion that the liability provisions of the Truth in Lending Act are not penal. Having concluded that the remedy provided

by § 1640(a) was not penal, the *Porter* court then disposed of the question of survival and assignment according to general principles of common law. See *Bowles v. Farmers National Bank,* 147 F.2d 425, 430 (6th Cir. 1945). See also *Heikkila v. Barber,* 308 F.2d 558, 561 (9th Cir. 1962). Essentially the *Porter* court concluded that the Truth in Lending Act gives rise to a cause of action for "tortious interference with property rights or monetary interest." *Porter v. Household Finance Corporation,* 385 F.Supp. at 344. Since such actions survive and are assignable at common law, they properly pass to the trustee under § 70a(5) of the Bankruptcy Act.

Additionally the Court found that actions based upon tortious injury to property are subject to process under the provisions of R.C. 2333.01 and thus such actions pass as a right of action "which might have been levied upon and sold under judicial process against [the bankrupt] or otherwise seized, impounded, or sequestered. . . ."

Finally, in dictum, the Court found that a Truth in Lending action was able to pass pursuant to § 70a(6) as a right "arising upon contracts, or usury, or the unlawful taking or detention of or injury to [the bankrupt's] property. . . ." See also *In re Dunne,* 407 F.Supp. 308 (D.R.I.1976) in which the Court, citing *Porter,* finds a Truth in Lending cause of action to be similar to one for usury and holds that such an action passes pursuant to § 70a(6).

■ I agree with the conclusion and underlying reasoning of the *Porter* court and hereby adopt it. Accordingly, I find that a cause of action arising under the Truth in Lending Act passes to a trustee in bankruptcy pursuant to § 70a(5) and (6) and that the plaintiff trustee has standing to bring the instant action.

The following conclusions of law are hereby made by this Court:

1. The Court has jurisdiction of this cause of action by virtue of 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337.

2. The trustee has standing to bring this action by virtue of 11 U.S.C. § 70(a).

3. Household Finance Corporation has violated the provisions of the Truth in Lending law, specifically Regulation Z, Section 226.6(a), 12 C.F.R. 226.1 *et seq.,* by failing to make clearly and conspicuously the disclosure required under the Act.

4. The trustee is entitled to judgment against defendant Household Finance Corporation in an amount equal to any actual damage suffered by the bankrupts plus twice the finance charge ($487.60) plus court costs and reasonable attorney fees.