Steve **TINSMAN** and Nancy **Tinsman**,
Plaintiffs-Appellees,

v.

**MOLINE BENEFICIAL FINANCE COMPANY, Defendant-Appellant.**

No. 75–1764.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1976.

Decided Feb. 27, 1976.

As Amended March 23, 1976.

William H. Dailey, Moline, Ill., for defendant-appellant.

Tom M. Lytton, East Moline, Ill., for plaintiffs-appellees.

Before TONE and BAUER, Circuit Judges, and HOFFMAN, Senior District Judge.*

TONE, Circuit Judge.

The question we decide on this appeal is whether the description of the security interest in a consumer loan agreement complies with the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226 *et seq.*, promulgated under that statute. The District Court held that it did not, and we affirm.

To obtain funds for the purchase of furniture, plaintiffs entered into a written loan agreement with the defendant finance company. Two months later they filed suit alleging that the loan agreement violated the Act and regulation in improperly describing the security interest and in two other respects which we need not consider to decide this case.[1] On plaintiffs' motion for summary judgment, the District Court determined that defendant had committed all three violations and, pursuant to 15 U.S.C. § 1640(a), awarded the statutory penalty plus attorneys' fees and costs.

The Truth-in-Lending Act and Regulation Z have recently been summarized by Judge Sprecher in *Allen v. Beneficial Finance Co.*, 531 F.2d 797 (7th Cir. 1976). The Act, it was there noted, was passed by Congress in 1968 as the result of growing congressional concern over consumers' ignorance of the nature and cost of their credit obligations. See generally *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 363–369, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). The specific purpose of the Act was "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. To assist in the achievement of that goal, the Federal Reserve Board is empowered to construe the Act's broad provisions and to prescribe regulations. 15 U.S.C. § 1604. Regulation Z was prescribed by the Board pursuant to that authority. The Act further provides that upon failure of the creditor to disclose information required to be disclosed by the statute or regulations, he becomes liable to the debtor for twice the amount of the finance charge, plus costs and attorneys' fees. 15 U.S.C. § 1640(a).

The provision of Regulation Z relating to disclosure of security interests, § 226.-8(b)(5), provides in pertinent part as follows:

"(b) *Disclosures in sale and nonsale credit.* In any transaction subject to this section, the following items, as applicable, shall be disclosed:

.    .    .    .    .

"(5) A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates .    .    .. If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by

---

* The Honorable Julius J. Hoffman, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. The other alleged violations were inadequate disclosure of the method of computing the unearned portion of the finance charge for prepayment purposes (consisting of mere mention of the "Rule of 78ths") and failure to describe each item included in the finance charge when there was only one item.

any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired."

The portion of the loan agreement in the case at bar containing the challenged security description is as follows:

SECURITY: The security for this loan is checked below:

Security Agreement dated 7/31/74 _____ Yr. _____ Make

☒ Furniture
☐ Auto
☐ Accommod Maker
☐ Wage Assignment
No. X
INSURANCE IS INCLUDED IF COST OR PREMIUM IS INSERTED TO THE LEFT HEREON

"If one or more boxes alongside the words "Furniture" or "Auto" are checked, it indicates that a security interest in personal property has been created by the execution of a Security Agreement and a clear identification of the collateral covered by such Security Agreement is set forth below as "Schedule A". The Security Agreement secures future advances or loans made by Lender to Borrowers, at Lender's option, within five years of the date of such Security Agreement.

\* \* \* \* \* \* \*

SCHEDULE "A"

SECURITY Continued

A certain motor vehicle, complete with all attachments and equipment, now located at the address of the Debtors indicated in the box above, to wit

| MAKE | SERIAL NO. | BODY STYLE | MODEL YEAR | OTHER IDENTIFICATION |
|------|-----------|-----------|-----------|---------------------|

All of the consumer goods of every kind now owned or hereafter acquired by Debtors in replacement of said consumer goods and now owned or hereafter located in or about the place of residence of the Debtors at the address shown above.

1. Nite Stand
1. Chest
1. 3/4 Visionaire Box
1. "    " Matt
1. Frane
1. Sofa & Chair Blue
1. Dinette Set oak Blk Vinyl 6 Chairs

1. Table 4 Chairs Yellow Formica Special Ovl
1. Table
2. Commode

The consumer goods described below were purchased with the proceeds of the loan secured hereby.

Liens and Encumbrances:

■ Plaintiffs' attack focuses on the words,

"All of the consumer goods of every kind now owned or hereafter acquired by Debtors in replacement of said consumer goods and now owned or hereafter located in or about the place of residence of the Debtors' at the address shown above." [2]

Plaintiffs contend that the security interest stated is so broad that it is invalid under section 9–204(2) of the Illinois Uniform Commercial Code (UCC), Ill.Rev.Stat.1973, ch. 26, § 1–101 *et seq.* That section provides, with an exception not relevant here, as follows:

"No security interest attaches under an after-acquired property clause to consumer goods . . . when given as additional security unless the debtor acquires rights in them within 10 days after the secured party gives value."

Defendant argues, however, that since "proceeds" of collateral are automatically covered by an existing security agreement under UCC § 9–306(3)(a),[3] any goods "acquired by Debtors in replacement" of collateral would likewise be covered; and that the replacement goods would not, therefore, constitute "additional security" to which the 10-day limitation is applicable. The difficulty with this argument is that "replacement" is not synonymous with "proceeds"

as defined by UCC § 9–306(1).[4] Replacement goods may be financed from sources other than proceeds. Yet all replacements would be covered by defendant's security arrangement, regardless of whether they were purchased within the 10-day limitation.

We need not stop here, however, for replacement items are not the only kind of consumer goods covered by the challenged description. Because of the repetition of the words "now owned or hereafter," the description covers "[a]ll of the consumer goods of every kind . . . now owned or hereafter located in or about the place of residence of the Debtors," thereby clearly failing to allow for the 10-day limitation of UCC § 9–204(2). A reading of the form would lead the debtors to conclude erroneously that the security interest extends to all goods located in or about their residence at any time the loan agreement is in effect, even though Illinois law precludes such a security interest covering consumer goods acquired more than 10 days after the secured party gives value.

Not only does the clause just quoted ignore the 10-day limitation, but it purports to secure for the creditor all of the consumer property in or about the plaintiffs' residence, regardless of who owns the goods. Even apart from the question of unconscionability,[5] the agreement of course could

**2.** It is not apparent whether the articles of furniture listed under the quoted words were those purchased with the proceeds of the loan, in which case they seem to appear in the wrong place on the form, or were already owned by the borrower when the loan was made.

**3.** UCC § 9–306(3)(a) provides:

"(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected 10 days after receipt of the proceeds by the debtor unless

"(a) a filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may be perfected by filing in the office or offices where the financing statement has been filed and, if the proceeds are acquired with cash proceeds, the description of collateral in the

financing statement indicates the types of property constituting the proceeds . . . ."

**4.** UCC § 9–306(1) provides:

" 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are 'cash proceeds'. All other proceeds are 'noncash proceeds'."

**5.** UCC § 2–302(1), dealing with unconscionable contracts applies only to sales and not security transactions. See UCC § 2–102; *In re Advance Printing & Litho Co.*, 277 F.Supp. 101, 105 (W.D.Pa.1967), *aff'd*, 387 F.2d 952 (3d Cir. 1967). Illinois courts, however, recognized the concept of unconscionability long before the UCC became law. See, *e. g., Fox v. Kitton*, 19

not create a security interest in goods in which the borrowers had no interest. See UCC § 9–203(1)(c). An unsophisticated reader might nonetheless conclude that goods belonging to a relative or lodger living in the debtors' house are encumbered by the security interest.

Since the description of the type of security interest held and the identification of the secured property are misleading, and the fact of after-acquired property interests is not "clearly set forth" with anything approaching accuracy, the description of the security interest violates § 226.8(b)(5) of Regulation Z[6] and the Truth-in-Lending Act. This conclusion is supported by a public position letter of the chief of the Federal Reserve Board's Truth-in-Lending Section,[7] as well as by decisions of other courts which have considered the question in similar contexts. *Woods v. Beneficial Finance Co.,* 395 F.Supp. 9, 14 (D.Or.1975); *Evans v. Household Finance Corp.,* CCH Consumer Credit Guide ¶ 99,007 (S.D.Ia.1973). See also the earlier decision of Judge Morgan in *Johnson*

*v. Associates Finance, Inc.,* 369 F.Supp. 1121, 1122–1123 (S.D.Ill.1974).

■ We need not reach the other issues which the District Court decided adversely to defendant as alternative grounds of decision, since the award of damages and attorneys' fees[8] must be sustained if defendant's disclosure violates the regulation and statute in any respect and only one recovery is permissible even if there are multiple violations.[9] We express no opinion as to the correctness of the District Court's decision on those other issues.

Affirmed.

Ill. 519, 531–532 (1858); *Marshall Milling Co. v. Rosenbluth,* 231 Ill.App. 325, 335–338 (1924); See also *Williams v. Walker-Thomas Furniture Co.,* 121 U.S.App.D.C. 315, 350 F.2d 445 (D.C. Cir. 1965); *In re Johnson,* 13 UCC Rep. 953, 956–957 (bankruptcy, D.Neb.1973); *In re Jackson,* 9 UCC Rep. 1152, 1157–1159 (bankruptcy, W.D.Mo.1971).

6. We do not decide whether the stated agreement is also a violation of § 226.6(c), as the District Court held.

7. The letter, which appears in the CCH Consumer Credit Guide ¶ 31,151, and is dated August 22, 1974, reads in pertinent part as follows:

"[E]ach creditor must insure that all information disclosed is accurate according to the law of the jurisdiction in which the disclosure form is to be used [citing 226.8(b)(5)] . . . . The description of that security interest should accurately reflect the type of security interest that may be legally acquired under the appropriate State law.

" . . . Certainly, it would not appear that the creditor could legally acquire a greater security interest in the debtor's prop-

erty than permitted by State law merely by listing a greater security interest in the Truth in Lending disclosure statement."

8. Defendant has not challenged the award of attorneys' fees, the amount of which, unlike the amount of damages, may be dependent upon whether plaintiffs ultimately prevail on all or only some of the issues. *Cf. Albrecht v. Herald Co.,* 452 F.2d 124, 131 (8th Cir. 1971); *Farmington Dowel Products Co. v. Forster Mfg. Co.,* 421 F.2d 61, 92 (1st Cir. 1970). There is therefore no attorneys' fee question which would justify our deciding the other substantive claims of error.

9. The parties concede this is so. While the amendment specifically limiting a plaintiff to a single recovery under circumstances like those present here (now 15 U.S.C. § 1640(g)) was not adopted until several months after the transaction took place, and is therefore inapplicable, the legislative history of the Truth-in-Lending Act indicates that only a single recovery was intended under that Act. See H.R. Rep. No. 1040, 90th Cong., 2d Sess. (1968), 1968 *U.S. Code Cong. & Admin.News,* pp. 1962, 1976.