Denis J. MURPHY, Trustee, Plaintiff,

v.

BENEFICIAL FINANCE COMPANY OF CENTRAL OHIO, Defendant.

Denis J. MURPHY, Trustee, Plaintiff,

v.

BENEFICIAL FINANCE CO., Defendant.

Denis J. MURPHY, Trustee, Plaintiff,

v.

BENEFICIAL FINANCE CO. OF CENTRAL OHIO et al., Defendants.

Donald M. DRAKE, Trustee, Plaintiff,

v.

BENEFICIAL FINANCE CO. OF COLUMBUS, Defendant.

Craig M. STEWART, Trustee, Plaintiff,

v.

BENEFICIAL FINANCE CO. OF CENTRAL OHIO, Defendant.

Denis J. MURPHY, Trustee, Plaintiff,

v.

PUBLIC FINANCE COMPANY, Defendant.

Craig M. STEWART, Trustee, Plaintiff,

v.

BENEFICIAL FINANCE COMPANY OF COLUMBUS, Defendant (two cases).

Craig M. STEWART, Trustee, Plaintiff,

v.

PUBLIC FINANCE CORPORATION, Defendant.

Civ. A. Nos. 75–250, 75–254, 75–262, 75–266, 75–270, 75–272, 75–286, 75–645 and 75–878.

United States District Court, S. D. Ohio, E. D.

July 12, 1976.

Denis J. Murphy, pro se.

John C. Elam, Robert W. Werth, Columbus, Ohio, for Beneficial Finance.

Craig M. Stewart, pro se.

Edward F. Lynch, Columbus, Ohio, for Public Finance.

## OPINION AND ORDER

DUNCAN, District Judge.

These civil actions are instituted under Title I of the Consumer Credit Protection Act, as amended, generally known as the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, seeking monetary relief for alleged violations of the Act and the regulations promulgated thereunder, Regulation Z, 12 C.F.R. § 226.1 *et seq.* Jurisdiction of this Court is had pursuant to § 130(e) of the Act, 15 U.S.C. § 1640(e). Plaintiff in each case is a trustee in bankruptcy vested by operation of law with title to a right of action under the Truth in Lending Act. 11 U.S.C. § 110(a). See *In re Dunne*, 407 F.Supp. 308 (D.R.I.1976); *Porter v. Household Finance Corporation*, 385 F.Supp. 336 (S.D.Ohio 1974); *Murphy v. Household Finance Corporation*, 424 F.Supp. 176 (S.D. Ohio 1976). Each complaint alleges that defendant Beneficial Finance Company of Central Ohio, Beneficial Finance Company of Columbus, or Public Finance Corporation extended consumer credit to the respective bankrupts and in so doing violated provisions of the Truth in Lending Act and Regulation Z. The cases are before the Court upon the motion of the trustees for summary judgment. The Court finds that there is a common question presented regarding the disclosure of a security interest retained by defendants and thus believes it proper to consolidate these cases for purposes of determining whether a violation of the Act has occurred. The Court further finds, upon a review of the documents, memoranda and affidavits submitted by the parties, that there is in these cases no factual dispute concerning the nature of the transactions involved and the nature and extent of the disclosures made by the respective creditors. Since it is the law, and not the facts, which is contested in these cases, the Rule 56 procedure for summary judgment is an appropriate vehicle.

Civil Action No. 75–262 involves two separate credit advances, one a consumer credit sale not under an open end plan, see 15 U.S.C. § 1602(g) through (i) and 15 U.S.C. § 1638(a), and the other a consumer loan not under an open end plan, see 15 U.S.C. § 1602(g) through (i) and 15 U.S.C. § 1639(a). The remaining cases concern consumer loans not under an open end plan. Public Finance Corporation, Beneficial Finance Company of Central Ohio, and Beneficial Finance Company of Columbus regularly extend credit for which the payment of a finance charge is required, rendering them "creditors" under the statutory definition, 15 U.S.C. § 1602(f). Plaintiffs allege, *inter alia,* that the defendants have failed to disclose the security interest retained or acquired and have failed to give a clear identification of the property to which the security interest relates, in violation of 15 U.S.C. § 1639(a)(8) and Regulation Z, 12 C.F.R. § 226.8(a)(5). 15 U.S.C. § 1639(a)(8) (emphasis supplied) provides:

(a) Any creditor making a consumer loan . . . in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan *shall* disclose *each* of the following items, to . . . the extent applicable:

.     .     .     .

(8) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a *clear identification of the property to which the security interest relates.*

Regulation Z, 12 C.F.R. § 226.8(a) (emphasis supplied) provides, in pertinent part, as follows:

At the time disclosures are made, the creditor shall furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made and on which the creditor is identified. *All of the disclosures shall be*

*made together* on either (1) the note or other instrument . . . or (2) one side of a separate statement which identifies the transaction.

12 C.F.R. § 226.8(b)(5) (emphasis supplied) concerns consumer loans and provides in pertinent part:

(b) In any transaction subject to this section, the following items, as applicable, *shall be disclosed:*

.   .   .   .   .

(5) A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, *and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify.* In any such case where a clear identification of such property cannot properly be made on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable. *If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be, secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the types of security interest held, retained or acquired.*

In the seven cases in which a Beneficial Finance Company is a defendant,[1] disclosure forms were used which referenced a security agreement of a particular date, and included a box with the word "Furniture" beside it, which box was checked. In the same area of the form the following language appears:

If the box alongside the word "Furniture" is checked, the Security Agreement identified by the date shown hereon covers all of the consumer goods of every kind then owned or thereafter acquired by the Borrowers in replacement thereof and then or thereafter located at the Borrowers' place of residence set forth hereon. Such Security Agreement secures future advances or loans made by Lender to Borrowers, at Lender's option, within five years of the date of such Security Agreement.

In the two cases in which Public Finance Corporation is a defendant,[2] Public Finance used nearly identical disclosure forms which referenced a security agreement of a particular date and included a checked box after which the following language appeared:

Consumer Goods including but not limited to household goods, furniture, appliances and personal property of all kinds and description and all additions, replacements and accessories thereto which are hereafter acquired by borrowers.

The common issue in these cases is whether such language adequately complies with the disclosure requirements of 15 U.S.C. § 1639(a)(8) and Regulation Z, 12 C.F.R. §§ 226.8(b)(5) and 226.8(a), set forth hereinabove.

■ These credit transactions all occurred in Ohio, which, like other Uniform Commercial Code jurisdictions, permits the

---

**1.** Beneficial Finance Company of Columbus is a defendant in 75–254, 75–266, 75–286 and 75–645. Beneficial Finance Company of Central Ohio is a defendant in 75–250, 75–262 and 75–270. In 75–262, Giant Furniture Warehouse, Inc. is named as a co-defendant; plaintiff on October 7, 1975, made proper application to the Clerk for entry of a default against

Giant. Under Rule 55(a), Fed.R.Civ.P., the Clerk was required to enter a default at that time. Giant has yet to answer plaintiff's duly served summons, and I conclude that a default judgment should be entered against Giant pursuant to Rule 55(b)(2).

**2.** Civil Action Numbers 75–272 and 75–878.

acquisition of a security interest (as additional security) in after-acquired consumer goods only if the goods are "accessions" or if the borrower obtains rights to the after-acquired goods within ten days after the secured party gives value. R.C. 1309.-15(D)(2).[3] "Accessions" are goods which are "installed in or affixed to other goods." R.C. 1309.33(A).[4] Defendants Beneficial and Public Finance in the instant cases disclosed the acquisition of a security interest in, *inter alia,* after-acquired "replacements" of consumer goods, without reference to "accessions" or to a ten-day limitation period. Under prevailing court decisions such disclosure is violative of the statute and regulations set out hereinabove.

Perhaps the most recent and most pertinent reported decision on the question of the adequacy of disclosure of security interests is *Tinsman v. Moline Beneficial Finance Company,* 531 F.2d 815 (7th Cir. 1976). In *Tinsman* Moline Beneficial used disclosure language nearly identical to that used by defendants Beneficial in the instant cases: "All of the consumer goods of every kind now owned or hereafter acquired by Debtors in replacement of said consumer goods and now owned or hereafter located in or about the place of residence of the Debtor at the address shown above." 531 F.2d at 817. The Seventh Circuit rejected Moline Beneficial's contention that replacements of collateral referred only to proceeds of collateral. The Court recognized that a security interest may properly attach to proceeds of collateral under the Uniform Commercial Code, but it found that

> "replacement" is not synonymous with "proceeds" as defined by UCC § 9–306(1). Replacement goods may be financed from sources other than proceeds. Yet all replacements would be covered by defend-

ant's security arrangement, regardless of whether they were purchased within the 10-day limitation.

531 F.2d at 818 (footnote omitted). And in *Woods v. Beneficial Finance Company of Eugene,* 395 F.Supp. 9, 14 (D.Ore.1975), the court stated, "Beneficial's 'replacement' language is superfluous. It might lead a consumer into believing Beneficial retained an interest in something purchased to replace a worn out consumer good." See also *Kenney v. Landis Financial Group, Inc.,* 349 F.Supp. 939, 945 (N.D.Iowa 1972), where the court stated that the 15 U.S.C. § 1639(a)(8) words "clear identification of the property to which a security interest relates" mean that "the goods must be identified so as to preclude any reasonable question regarding the goods to which the security interest attaches."

In addition to the *Tinsman, Woods* and *Kenney* cases, other reported decisions indicate that a creditor violates the Act if it discloses a security interest in after-acquired property which under applicable state law is broader than the security interest which it can in fact acquire or retain. *Ives v. W. T. Grant Company,* 522 F.2d 749, 761 n. 29 (2d Cir. 1975); *Sneed v. Beneficial Finance Company of Hawaii,* 410 F.Supp. 1135 (D.Haw.1976); *In re Dunne,* 407 F.Supp. 308, 310–311 (D.R.I.1976); *Johnson v. Associates Finance, Inc.,* 369 F.Supp. 1121, 1122–1123 (S.D.Ill.1974). This Court has found no reported court decisions (nor have any been cited) which would support defendants' contention that disclosure language of the type used in the instant cases would constitute a § 226.8(b)(5) "clear identification of the property to which the security interest relates" in a UCC jurisdiction.

---

**3.** R.C. 1309.15(D)(2) [UCC § 9–204(4)(b)] provides as follows:

(D) No security interest attaches under an after-acquired property clause:

. . . . .

(2) to consumer goods other than accessions when given as additional security unless the debtor acquires rights in them within ten days after the secured party gives value.

**4.** R.C. 1309.33(A) [UCC § 9–314(1)], styled "Accessions," provides as follows:

A security interest in goods which attaches before they are installed in or affixed to other goods takes priorities as to the goods installed or affixed over the claims of all persons to the whole except as stated in division (C) of this section and subject to division (A) of section 1309.34 of the Revised Code.

Defendants Beneficial, however, rely upon Federal Reserve Board Public Information Letter No. 983, dated January 5, 1976, and insist that the above-cited cases do not accurately reflect the present state of the law under the Truth in Lending Act. FRB Letter No. 983 modifies a prior letter, No. 829. The more recent letter, No. 983, was issued long after credit was extended in the instant cases; Beneficials' reliance upon No. 983, therefore, raises no question concerning good faith compliance with a Board interpretation under 15 U.S.C. § 1640(f) as amended and made applicable here by §§ 406 and 408(e) of the 1974 amendments.[5] Rather, the question is whether, notwithstanding the court decisions cited hereinabove, this Court should adopt the reasoning of No. 983 as a proper construction of the statute and regulations.

As a general rule,

The rulings, interpretations and opinions [of an agency] . . . do constitute a body of experience and informed judgment to which the courts . . . may properly resort for guidance. The weight of such a judgment in a particular case will depend on the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). The interpretations and opinion letters of the Federal Reserve Board in the Truth in Lending context are of perhaps even greater weight than ordinary agency constructions, because of the broad delegation of authority granted the FRB by the Congress, see 15 U.S.C. § 1604;[6] *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 372, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *Philbeck v. Timmers Chevrolet, Inc.,* 499 F.2d 971, 977 (5th Cir. 1974); *Bone v. Hibernia Bank,* 493 F.2d 135, 139 (9th Cir. 1974); *Barksdale v. Peoples Financial Corp. of Alpharetta,* 393 F.Supp. 112, 115 (N.D. Ga.1975). Staff opinions of the FRB are not, however, always followed by the courts in Truth in Lending cases. See, *e. g., Pedro v. Pacific Plan of California,* 393 F.Supp. 315, 322–23 (N.D.Cal.1975).

FRB Letter No. 983, set out in its entirety in the margin,[7] emphasizes the last sentence of 12 C.F.R. § 226.8(b)(5), which provides:

---

**5.** 15 U.S.C. § 1640(f), added to the 1968 Act by § 406 of Title IV of an Act of October 28, 1974, Pub.L. No. 93–495, 88 Stat.1500, set out at 1974 *U.S. Code Cong. and Admin.News* pp. 1724, 1745, provides that no liability attaches under the Act for "any act done or omitted in good faith in conformity with any rule, regulation or interpretation thereof by the Board." Under §§ 308 and 416 of the 1974 amendments, most changes in the Act are effective either upon enactment or one year thereafter, and are therefore not pertinent to a resolution of the issues presented in these cases. Pursuant to § 408(e) of the 1974 amendments, however, the modifications contained in §§ 406, 407 and 408 of the amendments

shall apply in determining the liability of any person under chapter 2 [15 U.S.C. §§ 1631–44] or 4 [15 U.S.C. §§ 1666–1666j] of the Truth in Lending Act, unless prior to the date of enactment of this Act [October 28, 1974] such liability has been determined by final judgment of a court of competent jurisdiction and no further review of such judgment may be had by appeal or otherwise.

Sections 406 through 408 of the 1974 amendments are therefore controlling here.

**6.** 15 U.S.C. § 1604 provides:

The Board shall prescribe regulations to carry out the purposes of this subchapter. These regulations may contain such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith.

It is noteworthy that this enabling section concerns regulations prescribed by the Board, and does not concern Public Information Letters issued by the Board's staff.

**7.** This is in response to your letter of . . . and your previous correspondence with this office concerning Public Information Letter 829. Specifically, you question the conclusions stated in that letter as to the proper disclosure of a security interest in after-acquired property under § 226.8(b)(5) of Regulation Z.

Letter 829 addressed the situation in which a creditor discloses a security interest in *all*

If after-acquired property will be subject to the security interest . . . this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.

Assistant Director Kluckman in his No. 983 analysis states that this last sentence of § 226.8(b)(5) is "the relevant provision in that section," and that the sentence only requires that the creditor disclose *the fact* of after-acquired collateral, and not a detailed identification thereof.

■ The statute [15 U.S.C. § 1639(a)(8)] and the regulation [12 C.F.R. § 226.8(b)(5)] plainly require *two* separate disclosures concerning security interests which arise from closed-end consumer loan transactions: (1) a description of any security interest involved, *and* (2) a clear identification of the property to which it relates. The last sentence of § 226.8(b)(5), which Mr. Kluckman apparently found to control the question

addressed in No. 983, provides that the fact of a security interest in after-acquired property "shall be clearly set forth *in conjunction with the description or identification of the type of security interest . . . acquired.*" Fairly read, then, the last sentence of § 226.8(b)(5) concerns compliance with the requirement that a creditor disclose a description of the security interest acquired; the sentence does not appear to relate in any way to the independent duty of creditors to disclose clearly *the property* to which the described security interest relates. In my judgment, FRB Letter No. 983, by its emphasis upon an allowed method of disclosing a description of a security interest, unjustifiably overlooks this independent duty to describe *clearly* the property affected. Under the unambiguous terms of 15 U.S.C. § 1639(a)(8) and 12 C.F.R. § 226.8(b)(5), a disclosure of the fact of a security interest in after-acquired property is an adequate description of a security interest, but such a generalized disclosure by no means clearly informs the borrower

after-acquired property when the relevant State law only permits the acquisition of a security interest in those consumer goods in which the debtor acquires rights within 10 days after the secured party gives value. This limitation is found in § 9–204 of the Uniform Commercial Code, which is in effect in 49 States. The inquiring creditor had based this disclosure on the security interest description contained in Exhibit E of the Board's pamphlet *What You Ought to Know About Truth in Lending* and questioned whether reliance on the form would constitute a defense against civil liability under § 130(c) of the Act. Staff's response indicated that the description of the security interest must accurately reflect the type of security interest that may be validly acquired under State law, in order to comply with § 226.8(b)(5). Letter 829 has been interpreted to require that the 10-day limitation on after-acquired property be included in the security interest disclosure under that section.

Upon further consideration of that letter, staff believes that, to the extent that it would require a creditor to disclose limitations on after-acquired property, Letter 829 should be modified. In staff's opinion, it would be sufficient, in disclosing an after-acquired property clause under § 226.8(b)(5), to state simply that the security interest covers such property, without further describing the manner and conditions under which the interest at-

taches. We believe that this would comply with the relevant provision in that section, which requires the creditor to clearly set forth the *fact* that after-acquired property will be subject to the security interest.

It must be emphasized, however, that staff's position on this issue rests not on Exhibit E of the pamphlet but on Regulation Z itself. As indicated in Letter 829, we do not believe that a creditor can automatically comply with the Regulation by using a sample form, regardless of whether the terms of the creditor's own credit plan coincide with those described in that form. For example, if a creditor discloses that the Rule of 78's will be used to compute finance charge rebates and State law does not permit the use of that rebate method in that type of credit transaction, this disclosure would clearly violate § 226.8(b)(7), despite the fact that the creditor's disclosure exactly mirrors the language of Exhibit E.

Thus, we believe that Letter 829 is correct in stating that the forms found in the pamphlet are "not necessarily definitive or accurate for every credit transaction." Creditors must consider their own particular credit plans in light of the requirements of Regulation Z and design their disclosures accordingly.

Sincerely,

Jerauld C. Kluckman
Assistant Director

of the identity of the property to which the security interest attaches.

In addition to the fact that it derives scant support from the statute and Regulation Z, Public Information Letter No. 983 suffers from other infirmities. The letter is somewhat internally inconsistent; while it would allow a creditor to disclose with impunity a security interest in property which cannot be made subject to a security interest under applicable state law, it would not permit a creditor to disclose use of the Rule of 78's finance charge rebate method, if use of such method is contrary to applicable state law. The letter leaves the Court uncertain as to how such similarly inaccurate disclosures are distinguishable under the statute and regulations. Moreover, the letter includes no mention of reported court decisions which contain a contrary analysis, see, e. g., *Woods v. Beneficial Finance Company of Eugene,* 395 F.Supp. 9, 14 (D.Ore. 1975); *Johnson v. Associates Finance, Inc.,* 369 F.Supp. 1121, 1122–23 (S.D.Ill.1974); *Kenney v. Landis Financial Group, Inc.,* 349 F.Supp. 939, 945 (N.D.Iowa 1972). And, although No. 983 is inconsistent with, and purports to modify, No. 829, there is no discussion in the more recent letter concerning why the prior interpretation was inaccurate.

In short, I do not find Public Information Letter No. 983 to be persuasive on the question which it concerns. And, although the prior letter, No. 829, was relied upon by both the *Tinsman* court, 531 F.2d at 819, and the *Dunne* court, 407 F.Supp. at 311, I do not read these courts' reliance upon No. 829 to have been so determinative of their decisions that it could be said that modification of No. 829 should alter the result reached in those cases.

■ In 75–878, defendant Public Finance Corporation asserts that its after-acquired consumer goods clause is supported by a form published by the Federal Reserve Board in a publication entitled "What You Ought to Know About Truth in Lending." This publication provides that when the Board's form is properly completed, a creditor will be in compliance with the require-

ments of 12 C.F.R. § 226.7(b) and (c). 12 C.F.R. § 226.7, though, applies to *open end* credit accounts. Creditors are not required to identify the property affected by security interests in open end transactions, see 15 U.S.C. § 1637(a)(7). Public Finance engaged in making consumer loans not under open end credit plans, so that 75–878 is without 15 U.S.C. § 1637 and 12 C.F.R. § 226.7, and within 15 U.S.C. § 1639 and 12 C.F.R. § 226.8. Thus, defendant's reliance upon the Board's publication is entirely misplaced. See *Johnson v. Associates Finance, Inc.,* 369 F.Supp. 1121, 1123 (S.D.Ill.1974): "Moreover, the particular form relied upon by defendant here appears in said pamphlet for the express purpose of illustrating how a creditor could comply with 12 C.F.R. § 226.7(b) and (c), which is not the ground of plaintiff's attack in this suit." I hold that any reliance defendant may have placed in the Board publication it cites was not an "act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board" within the meaning of 15 U.S.C. § 1640(f),[8] which only applies where a creditor acts *in conformity with* a Board interpretation.

■ In 75–272, defendant Public Finance insists that the only security interest it acquired was in a Sylvania television set. The operative event under the Act is disclosure of credit costs and terms; here, defendant disclosed a security interest in "all additions, replacements and accessories" to the Williams' consumer goods. *Cf. Ives v. W. T. Grant Company,* 522 F.2d 749, 761 (2d Cir. 1975) (footnote omitted):

> Whether Grants actually retains a security interest is irrelevant. On its face, the contract provides for a security interest and for Grants to reveal later that there is none is hardly the type of disclosure Congress thought would "permit consumers to compare the cost of credit among different creditors and to shop effectively for the best credit buy." S.Rep. No. 392, supra, at 1.

Thus, Public Finance cannot now cure its over-disclosure of collateral by asserting

8.  15 U.S.C. § 1640(f) is set out in note 5, *supra.*

that it in fact retained a less inclusive security interest.[9]

In 75–262, the complaint alleges at ¶ 4 that defendant Beneficial of Central Ohio and defendant Giant Furniture Warehouse, Inc.

> [o]n or about November 1, 1973, . . . consummated a consumer credit loan of 1939.43. A copy of the Disclosure Statements are attached hereto and incorporated by reference as plaintiff's Exhibits "A" and "B".

Exhibits A and B are both dated November 1, 1973; Exhibit A is a "Statement of Disclosure and Loan Register" of defendant Beneficial of Central Ohio, while Exhibit B is a "Retail Installment Contract (Purchase Money Security Agreement)" of defaulting defendant Giant Furniture Warehouse, Inc. The prayer in the complaint seeks $1,000.00 from Beneficial Finance on Count I (concerning Exhibit A) and $276.00 from Giant Furniture and Beneficial (as assignee) on Count II (concerning Exhibit B). In his motion for summary judgment, however, plaintiff states, "The finance charge imposed in this transaction with respect to Exhibit "A" is $592.52, the finance charge with respect to Exhibit "B" is $169.53 so the trustee should recover $1,000.00 which is the mandatory amount, plus mandatory attorney's fees."

After a review of the materials submitted by the parties in 75–262, the Court is left uncertain as to whether Exhibits A and B in fact evidence separate loans. The Court is left with the impression that the McNeeleys may have borrowed a total of $1,939.43 from Beneficial of Central Ohio on November 1, 1973, some of which went to Giant Furniture Warehouse, Inc., as payment for goods received. See ¶ 4 of the complaint, set out hereinabove, where plaintiff pleaded that defendants Beneficial and Giant Furniture consummated a consumer loan on November 1, 1973. The Court finds and concludes that defendant Beneficial of Central Ohio violated the Act by its own inadequate disclosures in Exhibit A concerning the identity of after-acquired collateral arising from the consumer loan Beneficial made to the McNeeleys. The Court further finds and concludes that defendant Giant Furniture Warehouse, Inc., having defaulted (see n. 1 hereinabove), is liable for $276.00 and attorneys fees and costs, as prayed in the complaint, see Rule 54(c). Because the pleadings, memoranda and other materials submitted by plaintiff do not adequately establish Beneficial of Central Ohio's liability as an assignee of Exhibit B,[10] the Court

---

**9.** In 75–272, Public Finance Corporation's reliance upon the security agreement disclosures, vis-à-vis the disclosure statement itself, assumes, *sub silentio,* that an incorporation by reference in the disclosure statement of a separate security agreement may suffice under the Act if the documents, read together, clearly identify the collateral involved. Such an assumption will not withstand scrutiny. Regulation Z, 12 C.F.R. § 226.8(a), set out in the text hereinabove, provides that all required disclosures must as a general rule be made on the face of a single document. 12 C.F.R. § 226.-8(b)(5), also set out hereinabove, in turn requires (emphasis supplied) that if "a clear identification of such [collateral] cannot properly be made on *the* disclosure statement *due to the length of such identification,* the . . . instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement . . . evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable." Public Finance has failed to argue, nor could it, that the collateral involved—a television set—could not properly be identified on this disclosure statement due to the length of its description. Thus, the Court finds no justification on this record for going beyond the disclosure statement itself for a disclosure of the identification of the affected collateral.

**10.** Beneficial denies any liability concerning Exhibit B, citing 15 U.S.C. § 1614, which provides as a general rule that an assignee is liable for a Truth in Lending violation if the assigning creditor only if the violation "is apparent on the face of the instrument." § 1614 is not controlling in this case because it was added to the Act by the 1974 amendments, after the credit transactions involved in 75–272, and with prospective effect only. See n. 5, *supra,* and §§ 115 and 416 of the 1974 amendments, set out at 1974 *U.S.Code Cong. and Admin. News* pp. 1724, 1748 and 1749. The controlling section is 15 U.S.C. § 1640(d), and plaintiff has not pleaded or argued that Beneficial was "in a continuing business relationship with the original creditor" as required by that section.

will enter judgment for Beneficial on Count II of the complaint, unless plaintiff comes forward with adequate justification for a contrary result.

The Court, then, finds and concludes that the creditor in each of these cases failed to identify clearly the after-acquired collateral which arose as a result of the credit transactions at issue here, and that each is therefore liable for having "fail[ed] to comply with [a] requirement imposed" by 15 U.S.C. § 1639(a)(8), see 15 U.S.C. § 1640(a), as amended. Since, as amended, the Act provides that multiple failures to disclose in connection with a consumer loan give rise to only a single recovery, 15 U.S.C. § 1640(g),[11] I conclude that it would serve no useful purpose for the Court to examine the bulk of plaintiffs' remaining contentions concerning the alleged inadequacy of defendants' disclosures.

15 U.S.C. § 1640(a), as amended and made applicable here by § 408 of the 1974 amendments,[12] provides that twice the amount of any finance charge (not less than $100 nor more than $1,000), plus actual damages, costs and attorneys fees are available to a prevailing Truth in Lending plaintiff. Insofar, then, as the damages rest in part on the finance charge, it is necessary to determine the true finance charge involved in each of these cases. See *Doggett v. Ritter*

*Finance Company of Louisa*, 384 F.Supp. 150, 158 (W.D.Va.1974). The parties are not in dispute in four of these cases concerning the amount of the finance charge. The amounts are: 75–254—$589.26; 75–262—$592.52 as to defendant Beneficial of Central Ohio; 75–645—$193.23; 75–878—$416.42.

■ In 75–272, the plaintiff trustee asserts that the finance charge which defendant Public Finance Corporation disclosed ($167.78) should be increased by the unspecified amount of a "rebate" defendant received of part of the premium paid by the borrowers for credit life insurance. Defendant has admitted in its answers to interrogatories that it did receive a "credit" or "rebate" from its home office, which "credit" was intended to recompense defendant for miscellaneous overhead expenses incurred by defendant when it enrolled borrowers in the credit life program. From all that appears in the records, this "credit" or "rebate" flows from the premium charged for the credit life insurance. In other words, the cost of the "rebate" of which plaintiff complains was disclosed as part of the cost of the credit life insurance, although not itemized as such. Unless the entire charge for credit life insurance was not properly disclosed pursuant to 15 U.S.C. § 1605(b)[13] and 12 C.F.R. § 226.4(a)(5),[14]

---

11. 15 U.S.C. § 1640(g), added to the 1968 Act by § 407 of the 1974 amendments, and made applicable to these cases by § 408(e) of the amendments, see n. 5, *supra*, provides in relevant part:

   The multiple failure to disclose to any person any information required under this part to be disclosed in connection with a . . . consumer loan . . . shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rights to additional recoveries.

12. See n. 5, *supra*.

13. 15 U.S.C. § 1605(b) provides:

   Charges or premiums for credit life, accident, or health insurance written in connection with any consumer credit transaction shall be included in the finance charge unless

   (1) the coverage of the debtor by the insurance is not a factor in the approval by the creditor of the extension of credit, and this fact is clearly disclosed in writing to the person applying for or obtaining the extension of credit; and

   (2) in order to obtain the insurance in connection with the extension of credit, the person to whom the credit is extended must give specific affirmative written indication of his desire to do so after written disclosure to him of the cost thereof.

14. 12 C.F.R. § 226.4(a)(5) provides:

   Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

   (i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

   (ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

there was no duty to include the cost of the insurance (including the rebate) as part of the finance charge. In 75–272, plaintiff has abandoned his claim that the cost of credit life insurance was not properly disclosed. Thus, defendant may have violated the Act, but there is no indication that it failed to make the § 226.4(a)(5) disclosures so as to warrant including the cost of the insurance as part of the finance charge. I conclude, then, that the finance charge in 75–272 was $167.78.

In the remaining cases, 75–250, 75–266, 75–270 and 75–286, plaintiffs assert that defendants Beneficial of Columbus and Beneficial of Central Ohio received a partial "rebate" of credit life insurance premiums from the insurer, and that since this "rebated" amount was not disclosed to the borrowers, it should be included as part of the finance charge. Plaintiffs have not, however, controverted defendants' affidavits indicating that in each case the alleged "rebate" was in fact a refund of an unaccrued portion of a credit life premium associated with a prior loan. This refund was first credited to the borrowers' accounts by defendants; thereafter, defendants were reimbursed by the insurer in like amount. The Court simply finds no merit on this record in plaintiffs' contention that the refunds involved here were a "loan fee, points, finder's fee, or similar charge" within 12 C.F.R. § 226.4(a)(3), or that the refunds arose in connection with a credit sale so as to bring them within 12 C.F.R. § 226.8(c).[15] The finance charge involved in these transactions is therefore the amount disclosed, as follows: 75–250—$241.79; 75–266—$473.79; 75–270—$193.23; 75–286—$201.66.

Judgment will be entered for the plaintiff trustee in each of these cases upon submission within thirty (30) days by plaintiffs' counsel of a schedule of attorneys fees incurred in the course of the litigation. Plaintiffs may if they choose submit a prayer for actual damages pursuant to 15 U.S.C. § 1640(a)(1) as amended and made applicable here by § 408 of the 1974 amendments. See Rule 54(c). Defendants may respond to plaintiffs' schedules or amended prayers within twenty (20) days of filing; plaintiffs may reply within ten (10) days.

SO ORDERED.

---

**15.** The four Beneficial cases in which a "rebate" claim is made are actions brought on an extension of credit which refinanced a prior loan. The "rebate" arose when the creditor, in terminating the prior loan arrangements, refunded to the borrower the total unearned portion of the credit life premiums associated with the prior loan. If in the prior loan the credit life premium was disclosed as part of the finance charge, or if by operation of law it should have been included in such finance charge, an argument could be made that the method of computing any rebate of unearned premium should have been disclosed before the prior extension of credit, because 12 C.F.R. § 226.8(b)(7) requires identification of the method of computing *any* unearned portion of the finance charge in the event of prepayment in full. But plaintiffs do not bring suit on the prior extensions of credit, and as to the refinancing transactions which are at issue here, plaintiffs do not assert that the credit life premiums *are in fact part of the finance charges* involved.