Geter **ANDERSON** and Loretta Anderson, Appellants,

v.

**SOUTHERN DISCOUNT COMPANY,**
Appellee.

No. 77–1587.

United States Court of Appeals, Fourth Circuit.

Argued April 3, 1978.
Decided Sept. 21, 1978.

Herman L. Stephens, Winston-Salem, N. C. (Stephens, Peed & Walker, Winston-Salem, N. C., on brief), for appellants.

Walter W. Pitt, Jr., Winston-Salem, N. C. (Deal, Hutchins & Minor, Winston-Salem, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and LAY,* Circuit Judges.

HAYNSWORTH, Chief Judge:

This is an action by Mr. and Mrs. Anderson against the Southern Discount Company in which they assert that the Truth-in-Lending Act was violated in three respects. Summary judgment was entered for the defendant and we affirm.

## I.

In the note there was a provision that the Andersons would pay reasonable attorneys' fees in the event that, after default, a lawyer was engaged to institute legal proceedings for the collection of the note. The potential attorneys' fees, the Andersons say, are a "charge" which is part of the price of credit to them and that disclosure of the actual amount of the Andersons' attorneys' fees, or of a ceiling upon them, should be made. Their reliance is upon § 226.8(b)(4) of Regulation Z.

The Federal Reserve Board has had occasion to interpret that section of Regulation Z and has consistently read it to require disclosure of the attorneys' fees only if they are automatically imposed in the event of default.[1]

---

* Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. FRB Letters of June 23, 1970, March 19, 1970 (No. 290), CCH Consumer Credit Guide, Par. 30,404, 30,528.

Here, there was no imposition of attorneys' fees automatically upon default. Southern Discount Company was free to waive delinquencies, to work out extension of payment agreements, seek agreement for the repossession of the collateral or resort to lawful self help in its repossession. Only if Southern chose to resort to legal proceedings for collection of the note and actually engaged a lawyer for that purpose would the reasonable attorneys' fees be chargeable to the Andersons.[2]

## II.

The note was secured by a refrigerator, a kitchen range, a washing machine, a television set and a number of pieces of household furniture, each of which was listed and identified. The agreement also provided for a security interest in "all additions and accessions" to the listed chattels. This is said to constitute a violation of §§ 1631(a) and 1639(a) of the Truth-in-Lending Act and §§ 225.6(a) and 226.8(b)(5) of Regulation Z.

The Uniform Commercial Code limits a security interest in after-acquired consumer goods to those acquired within ten days after the lender gave value. U.C.C. 9–204(4)(b).[3] The Andersons contend that the phrase "all additions and accessions" covers generally all after-acquired household goods and that the Truth-in-Lending Act was violated by nondisclosure of the ten-day limit.[4]

Use of the words "additions and" tends toward the creation of ambiguity, as the district judge clearly recognized, but read in the context of the instrument and of a secured interest in specified items of household furniture, we cannot read it as broadly including all after-acquired furniture and household furnishings. The "additions and accessions" must be to specified listed items. An ice-making machine incorporated in the refrigerator would be an accession and included in the security agreement but a new record player would hardly be an "addition" to the kitchen range or the dining room table. Even if a second refrigerator were acquired, we cannot read the phrase "additions and accessions" to the existing refrigerator as including the second. We think the obvious meaning and the only proper interpretation of the phrase is that it covers only accessions, articles later acquired and physically attached to one of the listed articles.

## III.

Finally, the Andersons complain that in the note there is a provision that interest accrues at the rate of three per cent per month on the unpaid principal balance of up to three hundred dollars and one and one-half per cent per month on any unpaid principal balance exceeding three hundred dollars.

In *Mason v. General Finance Corporation*, 542 F.2d 1226 (4th Cir. 1976), we did find a violation of the statute when information about a so-called "contract rate" and the "annual percentage rate" disclosure required by federal law was included in the disclosure statement without the separation of the disclosures required by the federal statute. We thought such co-mingled disclosure confusing, but we do not have such a case here. Here, the disclosure statement, the agreement about the collateral and the promissory note are all on the same long piece of paper, but the disclosure statement is clearly and distinctly separated from the promissory note. The disclosure

2. If the note had called for the automatic imposition of attorneys' fees, so that they would amount to a delinquency charge within the meaning of Regulation Z, we do not suggest that the amount of such fees should be fixed in advance in a dollar sum. The point is not before us, but it probably would be detrimental to the interest of borrowers if potential legal fees were required to be fixed in an amount in advance when the extent of the necessary legal service is unknown.

3. Enacted in North Carolina as N.C.G.S. § 25–9–204(4)(b).

4. See, e. g. Pollock v. General Finance Corporation, 535 F.2d 295 (5th Cir. 1971); Tinsman v. Moline Beneficial Finance Company, 531 F.2d 815 (7th Cir. 1971).

statement contains all of the information required to be disclosed by the Truth-in-Lending Act, providing the borrowers with all of the information they need for "comparison shopping."[5] It contains no other information derived from different methods of computation or which might make the information in the disclosure statement confusing. The complaint is that the terms of the note are not the same as the terms of the disclosure statement. However, we find that they differ out of necessity.

The finance charge and the annual percentage rate disclosed in the federal disclosure statement are computed upon the assumption that all payments of principal and interest will be made on the due dates, neither sooner nor later. That, of course, is not the real world. Borrowers are sometimes tardy and sometimes anticipatory. Accordingly, the note here provides for the computation of interest to the actual date of each payment. Additionally, the borrowers were given the right of prepayment of principal without penalty.

Necessarily, the note was cast in terms of rates of interest. Had it contained no provision for interest, it would have been incomplete. Had it incorporated the hypothetical computation upon which the information in the disclosure statement is derived, it probably would have been in violation of state law and, at least, unfair to the borrower who prepays his obligations.

Of course, the note and its terms are clearly and distinctly separated from the disclosure statement and the information it contains. *See* Regulation Z, 226.6(b)(c); 12 C.F.R. 226.6(b) and (c).

### IV.

We conclude that the district court properly found no violation of the Truth-in-Lending Act.

*AFFIRMED.*

5. *Mourning v. Family Publications Service,* 411 U.S. 356, 364, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

WINTER, Circuit Judge, concurring in part and dissenting in part:

Although I agree with the majority opinion with regard to attorneys' fees and also with regard to after-acquired property, I think that there was a violation of Regulation Z in the statement in the promissory note about the monthly interest rate and that we should reverse on this issue.

The majority opinion's analysis of this issue rests on the conclusion that "the disclosure statement is clearly and distinctly separated from the promissory note" and that "the note and its terms are clearly and distinctly separated from the disclosure statement and the information it contains." This characterization of the loan document in question, I respectfully suggest, is not accurate. The disclosure statement, the promissory note and the security agreement are all on a single sheet of paper. There is no heading for the disclosure statement as such. There are headings for the promissory note and the security agreement, but the heading for the promissory note is in the same size and style as the headings of the security agreement and, moreover, there is on the back page of the document another subheading "general provisions" in the same size and style as the heading "promissory note."

Admittedly, the design of the document, though not pellucid, might be overlooked if that were its only shortcoming. But that is not the case. The so-called promissory note is confusing, and its placement makes the document's design flaws a serious defect. Chief among the problems with the note is that it is not phrased such that it would be a valid, legally enforceable obligation standing alone. It is undated, it does not identify the parties, and, more importantly, it does not state the principal amount of the note. For all of this information it makes reference to the disclosure statement which precedes it on the facing page of the single document, viz.:

For value received . . . the undersigned Borrower promises to pay to the order of the above named Lender at the address shown, the Amount Financed, Principal Amount of Note stated above, with interest thereon from the date of Loan at the rate of three percent (3%) per month on that part of the unpaid principal balance not in excess of $300.00 and one and one-half percent (1½%) per month on any remainder of such unpaid principal balance as permitted by and in accordance with the North Carolina Consumer Finance Act.

Furthermore, the paragraphs immediately following the statement of interest rates discuss the effect of prepayment, Southern's right of acceleration upon default and the borrower's obligation for attorneys' fees. All of this information is required to be disclosed under Regulation Z.

Thus, not only are the disclosure and note sections of the loan document not clearly segregated, the note section depends on information in the disclosure section and itself contains federal disclosure terms. The legal question is thus whether the loan document, as written, violates Regulation Z. I think that it does.

Regulation Z, 12 C.F.R. § 226.6(c), provides that when state law requires disclosures in terms different from those decreed by Regulation Z, the creditor must:

(1) Make such inconsistent disclosures on a separate paper apart from the disclosures made pursuant to this part, or

(2) Make such inconsistent disclosures on the same statement on which disclosures required by this part are made; provided:

(i) All disclosures required by this part appear separately and above any other disclosures,

(ii) Disclosures required by this part are identified by a clear and conspicuous heading indicating that they are made in compliance with Federal law, and

(iii) All inconsistent disclosures appear separately and below a conspicuous demarcation line, and are identified by a clear and conspicuous heading indicating that the statements made thereafter are inconsistent with the disclosure requirements of the Federal Truth in Lending Act.

As the majority recognizes, the information concerning interest rates contained in the promissory note section had to be stated in order for there to be a valid contract under state law. That being so, because the interest rate terminology used in the promissory note differs from the annual percentage rate terminology mandated by Regulation Z, § 226.6(c) requires that the two sections be conspicuously segregated. That plainly was not done here. Also, the loan document runs afoul of that portion of § 226.6(c) which provides:

At the creditor's or lessor's option, additional information or explanations may be supplied with any disclosure required by this part, but none shall be stated, utilized, or placed so as to mislead or confuse the customer or lessee or contradict, obscure, or detract attention from the information required by this part to be disclosed.

By impliedly cross-referencing the disclosure statement and the note, I think the loan document in this case might reasonably prevent a borrower from appreciating the relationship between the annual percentage rate, which federal law requires be disclosed, and the monthly interest rates of 3% and 1½% set forth in the promissory note. It is precisely that sort of confusion which Regulation Z seeks to eliminate.

In *Mason v. General Finance Corporation,* 542 F.2d 1226 (4 Cir. 1976), we held "that to accord state lending lingo equal billing on the lending contract does not accord with the congressional purpose and violates the Act and Regulation Z." 542 F.2d at 1233. I think the loan document in the instant case does just that and, therefore, that *Mason* requires reversal.