**Carolyn ROBINSON, Plaintiff,**

v.

**OLIN FEDERAL CREDIT UNION, Defendant.**

**Misc. Civ. No. B-83-90.**

United States District Court, D. Connecticut.

Oct. 5, 1984.

Francis X. Dineen, New Haven, Conn., for plaintiff.

Eugene Melchionne, Francis Grady, Waterbury, Conn., Daniel Meister, Norwalk, Conn., for defendant.

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ELLEN B. BURNS, District Judge.

This case is an adversary proceeding stemming from the Chapter 13 bankruptcy petition of plaintiff Carolyn Robinson ("Robinson"). Robinson filed an objection to defendant, Olin Federal Credit Union's ("Olin") proof of secured claim on February 17, 1983. This objection was referred to Bankruptcy Judge Alan Shiff of this district pursuant to sections (c)(1) and (h) of the Emergency Resolution for the Administration of the Bankruptcy System in the District of Connecticut, dated December 22,

1982 (the "Emergency Resolution"). Robinson then moved this court to withdraw the reference of this matter pursuant to section (c)(2) of the Emergency Resolution. On November 29, 1983, Robinson's motion to withdraw reference was granted and this proceeding was entered and docketed in the district court.

Robinson basically makes two claims in her objection to Olin's proof of secured claim. She first asserts that Olin's secured claim was disallowed in an earlier bankruptcy proceeding and its lien is therefore void under § 506(d) of the Bankruptcy Code, 11 U.S.C. § 506(d). She also asserts that Olin committed violations of the Connecticut Truth-In-Lending Act, Conn.Gen. Stat. § 36–393 *et seq.*, ("Connecticut TIL") and the federal Truth-In-Lending Act, 15 U.S.C. § 1601 *et seq.*, ("Federal TIL") Robinson claims that Olin's alleged violations of the Connecticut and Federal TILs give rise to a setoff against any claim asserted by Olin in the Chapter 13 case and an affirmative right to attorney's fees. Robinson has moved for summary judgment on her objection to Olin's secured claim.

FACTS:

On October 20, 1978, Robinson borrowed $7,939.00 from Olin at an annual interest rate of 9%, to be repaid in 48 equal installments. This loan was evidenced by a promissory note, a copy of which is appended to Robinson's Motion for Summary Judgment as Exhibit A. As collateral for this loan, Robinson executed a security agreement with Olin, pledging her 1979 Buick Regal as collateral (attached as Exhibit B of Robinson's Motion for Summary Judgment). On February 7, 1981, Robinson filed a Chapter 7 bankruptcy petition with the Bankruptcy Court in Bridgeport, Connecticut. The debt to Olin was scheduled as a secured claim and the Buick Regal was claimed as exempt property up to

the $1,200 permitted by 11 U.S.C. § 522(d)(2).

On March 5, 1981, Olin filed a complaint to reclaim property in the Chapter 7 case in an attempt to obtain possession of the Buick Regal. (Adv.Pro. 5–81–0084) On March 18, Robinson filed a motion to dismiss Olin's complaint. On April 29, Olin filed a new complaint for relief from automatic stay requesting that the stay under 11 U.S.C. § 362(a) be lifted and seeking an order directing Robinson to surrender the automobile to Olin. (Adv.Pro. 5–81–0155). Robinson counterclaimed, requesting that a determination of the amount of Olin's allowed secured claim be made pursuant to 11 U.S.C. § 506.

On April 30, 1981, Daniel Meister, the trustee in bankruptcy, sent a letter to the Bankruptcy Court expressing his opinion that the debtor's estate had no equity in the Buick Regal in light of Olin's security interest and Robinson's claim of exemption. He stated that he had no objection to judgment being entered for Olin.

Shortly before her discharge in bankruptcy, Robinson moved for a continuation of the automatic stay pending resolution of Olin's claim and Robinson's counterclaim. The Bankruptcy Court denied Robinson's motion and discharged Robinson under 11 U.S.C. § 727 on either May 14 or May 18, 1981.[1]

On July 21, 1981, Bankruptcy Judge Shiff, referring to a hearing scheduled for June 15, 1981, signed an order dismissing Olin's complaint to reclaim property (Adv. Pro. 5–81–0084) as moot. On July 30, 1981, referring to a hearing scheduled for May 18, 1981, Judge Shiff dismissed Olin's complaint for relief from stay, with prejudice for failure to prosecute and abstained from hearing Robinson's counterclaims. Following her discharge in the Chapter 7 proceeding Robinson commenced the Chapter 13

---

1. Robinson asserts that the discharge occurred on May 18, 1981. In its response to Robinson's request for admissions, Olin stated that the discharge occurred on May 14, 1981. Also, in its statement of material facts accompanying its memorandum opposing summary judgment

Olin claims that the discharge occurred on May 14, 1981. Olin has submitted a copy of the discharge dated May 14, 1981. The Bankruptcy Court's docket indicates that discharge was granted on May 14.

proceeding which gave rise to this adversary proceeding.

DISCUSSION:

## I. ROBINSON'S CLAIM THAT OLIN'S LIEN IS VOID AS A RESULT OF HER DISCHARGE IN BANKRUPTCY.

██ It has been frequently recognized that one of the primary purposes of the bankruptcy law is to give the debtor a fresh start, "unhampered by the pressure and discouragement of pre-existing debt." *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971). At the same time the Bankruptcy Code protects those creditors who have obtained security for the credit that they have extended. *In re Weathers*, 15 B.R. 945 (Bkcy.Kan.1981). *Cf.* 11 U.S.C. § 506(d) (liens only voided if secured claim is not allowed); 11 U.S.C. § 522(c)(2) (exempt property remains subject to unvoided lien).

Although Robinson claims that alleged violations of Connecticut and Federal TILs invalidate Olin's security interest in the Buick Regal, for the purposes of evaluating her claim that the lien was voided in the bankruptcy proceeding the security interest will be treated as effective and valid to establish a lien enforceable under state law. Robinson suggests three reasons why the lien was voided in bankruptcy: first, that application of 11 U.S.C. § 506(d) voids the lien because the claim was not an allowed secured claim; second, that the dismissal of Olin's complaint in the Chapter 7 case is *res judicata* and bars Olin's claim in this Chapter 13 case; and finally, that Olin's failure to object to Robinson's claiming the Buick Regal as exempt property prevents it from enforcing the lien after discharge.

### A. *Allowance of Olin's Secured Claim.*

Section 506(d) of the Bankruptcy Code, 11 U.S.C. § 506(d), states that a lien securing a claim that is not an allowed secured claim is void, with certain exceptions not germane to this case. Section 502(a) provides that a claim, proof of which is properly filed, is deemed allowed unless a party in interest objects. Robinson notes that she objected to Olin's claim by opposing its motion for reclamation and by requesting a determination of the claim. She asserts that, because an objection was filed, Olin's claim was not deemed to be allowed under section 502(a). Since the Bankruptcy Court abstained from deciding her objection, Olin's claim was not expressly allowed, and must be considered disallowed. Olin's lien, securing a disallowed claim, is therefore void under section 506(d).

██ Although Robinson's argument has some facial appeal, a closer analysis reveals that it is without merit. While a superficial reading of section 502(a) appears automatically to disallow a claim to which objection is made, when that subsection is read in conjunction with section 502(b) it becomes clear that disallowance is not automatic. Section 502(b) instructs the Bankruptcy Court to allow the claim unless it finds one of several specifically listed reasons for disallowance. The clear implication of section 502(b) is that, absent a finding of one of these enumerated reasons, the claim shall be considered to be allowed. Viewed in this fashion, Judge Shiff's decision to abstain on Robinson's request for determination of the claim did not act as a disallowance of Olin's claim. To hold otherwise would in effect say that a decision by a bankruptcy judge not to pass on the merits of a claim would act as a determination on the merits. Congress could not have intended such an "Alice in Wonderland" result in adopting the Bankruptcy Code.[2]

Olin also asserts that the Trustee in Bankruptcy abandoned the Buick Regal on April 30, 1981, and also that the Buick was

---

**2.** *See* H.R. No. 95–595, 95th Cong. 1st sess. 357 (1977), commenting on section 506(d):

> Subsection (d) permits liens to pass through the bankruptcy case unaffected. However if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under section 502 *and the claim is not allowed,* then the lien is void to the extent that the claim is not allowed ..."

U.S.Code Cong. & Admin.News, 1978 p. 5787 (emphasis added).

claimed as exempt by Robinson. Although it is unclear from this record whether or not the Trustee's letter of April 30 effected an abandonment, Olin's assertion at least raises a factual issue preventing the granting of Robinson's motion for summary judgment. If the Trustee did abandon the Buick Regal on April 30, that abandonment, together with Robinson's claim of exemption, effectively removed the Buick Regal from the bankrupt's estate. Because section 506 only allows for the determination of secured claims "in which the estate has an interest", Judge Shiff found it appropriate to abstain from hearing Robinson's objections to Olin's claim. *Cf. In re Harvey,* 3 B.R. 608 (Bkcy.M.D.Fla.1980) (Bankruptcy Code only provides for determination of allowed claims secured by a lien on property in which the estate has an interest). By abstaining from deciding Robinson's objection the Bankruptcy Court did not disallow Olin's claim so as to void its lien under 11 U.S.C. 506(d).

B. *Effect Of Dismissal Of Olin's Complaint For Relief From Stay.*

■ Robinson notes that Olin's complaint for relief from stay was dismissed with prejudice for failure to prosecute. By virtue of Fed.R.Civ.Proc. 41(b), a dismissal for failure to prosecute acts as an adjudication on the merits.

■ Olin disputes that the dismissal was with prejudice. Noting that Robinson's attorney prepared the order signed by Judge Shiff and inserted the words "with prejudice", Olin claims that a question of fact exists as to whether the dismissal was actually with prejudice.[3] In view of Judge Shiff's dismissal of Olin's complaint for reclamation as moot, and the lifting of the automatic stay upon the debtor's discharge, 11 U.S.C. § 362(c)(2)(C), it makes little sense that the complaint for

relief of stay was dismissed for failure to prosecute on July 30, 1984, 2½ months after the stay had lifted automatically.[4] However, while the questions raised by Olin may give rise to some doubts about the intention of the Bankruptcy Court in dismissing Olin's complaint, the judgment of a court cannot be challenged by extrinsic evidence. *Hill v. U.S. ex rel. Wampler,* 298 U.S. 460, 464, 56 S.Ct. 760, 762, 80 L.Ed. 1283 (1936). Olin's proper remedy was to move for relief from judgment under Fed.R.Civ.Proc. 60.

■ Olin also attacks the validity of the dismissal with prejudice. Olin asserts that since the automatic stay was lifted by May 14, 1981, its complaint for relief from the automatic stay became moot at that point.[5] Therefore, Judge Shiff's dismissal with prejudice after Olin's complaint became moot was without effect. Olin's characterization of the dismissal with prejudice is correct. An adversary proceeding is treated as a separate complaint under the Bankruptcy Rules. *See* Bankruptcy Rules § 7001 *et seq.* In effect an adversary proceeding presents the Bankruptcy Court with a separate case or controversy. A court does not have jurisdiction under Article III to decide a case when the issues presented are no longer live. *United States v. Parole Commission v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980). Because Olin's complaint for relief from the automatic stay was no longer "live" when the automatic stay was lifted, there was no longer a case or controversy before the Bankruptcy Court which could be dismissed with prejudice. Therefore, there has been no adjudication of Olin's claim which will bar enforcement of the lien.

---

**3.** Olin states that its attempts to obtain a transcript of the May 18, 1981, hearing referred to in the order of dismissal have been thwarted to date because of the death of the court reporter.

**4.** Robinson had moved for an extension of the automatic stay, which motion was denied on May 14, 1981.

**5.** Olin also suggests that the automatic stay was lifted on April 30, 1981 when the trustee abandoned the Buick Regal. *See In re Bell,* 700 F.2d 1053 (6th Cir.1983). Because Judge Shiff's dismissal was not signed and docketed until July 30, 1981, it is not necessary to decide precisely when the automatic stay was lifted.

## C. Effect Of Olin's Failure To Object To Exemption

Robinson asserts that Olin's failure to object to her claiming the Buick Regal as exempt property precludes Olin from enforcing its lien. The Bankruptcy Code provides that property claimed as exempt is not liable during or after the case for any debt of the debtor that arose before the commencement of the case *except* a lien that was not voided. 11 U.S.C. § 522(c)(2)(B). As the discussion above demonstrates Olin's lien was not voided under § 506(d) and therefore the exempted property may be liable for satisfaction of the lien.[6] Furthermore, Olin was under no obligation to object to Robinson's claim of exemption, or even to file a proof of claim with the Bankruptcy Court, in order to preserve its lien. *In re Certain*, 30 B.R. 379 (Bkcy.Conn.1983); *In re Pierce*, 29 B.R. 612, 614 (Bkcy.E.D.N.C.1983); *In re Weathers*, 15 B.R. 945, 946 (Bkcy.D.Kan. 1981). Although Robinson cites two cases to the contrary, these cases are in the clear minority. *See In re Pierce, supra.*

Because Olin was under no obligation to object to Robinson's claim of exemption, and its lien was not voided in bankruptcy, it is not precluded from proving its claim in the current action.

## II. ROBINSON'S CLAIMS FOR SETOFF AND ATTORNEY'S FEES FOR TRUTH-IN-LENDING VIOLATIONS

### A. Availability Of Relief Under Both Connecticut and Federal TILs.

Robinson has asserted a right to set off damages for violations of Federal and Connecticut TILs against any lien enforceable by Olin. Olin disputes Robinson's right to recover under both State and Federal laws.

The regulations implementing the Federal TIL permit a state with substantially similar disclosure provisions to apply for an exemption. 12 C.F.R. § 226.29 (1984). The granting of such an application exempts a class of transactions within the state from some of the requirements of the federal act. *Id.* Connecticut has applied for and been granted such an exemption. 12 C.F.R. Part 226, Supp. 1, § 226.29. However, the exemption does not apply to transactions in which a federally-chartered institution is a creditor. *Id.* Therefore, the federal regulations do not prevent application of both State and Federal law to federally-chartered institutions, unless the laws have conflicting requirements. See 12 C.F.R. § 226.28.

The Connecticut TIL, as it stood in 1978 when the transaction in question occurred, did not expressly prohibit recovery under both Federal and State law for TIL violations. However, in *Hartford Federal Savings & Loan v. Green*, 36 Conn.Sup. 506, 412 A.2d 709 (1979), the Appellate Session of the Connecticut Superior Court was faced with a similar problem. A federally-chartered savings and loan institution brought an action to recover on a note. The defendant counterclaimed under both Federal and State TILs. The trial court, noting that the Federal TIL applied to the transaction, held that the Connecticut TIL was inapplicable. The Appellate Session affirmed the trial court's ruling. 36 Conn.Sup. at 512, 412 A.2d 709.[7] The mandate of *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) requires this court to apply the Connecticut TIL as it would be applied by Connecticut courts. Since the highest Connecticut court that has addressed the issue has held that a federally-chartered institution is not subject to the

---

**6.** *See* H.R. No. 95–595, 95th Cong. 1st sess. 361 (1977). "The bankruptcy discharge will not prevent enforcement of valid liens." U.S.Code Cong. & Admin.News 1978, p. 5862.

**7.** In 1981 the Connecticut General Assembly amended the Connecticut TIL to clarify that

double recovery was not to be permitted. P.A. 81–158, § 8(i); Conn.Gen.Stat. § 36–407(i). This action was consistent with the Appellate Session's ruling in *Hartford Federal Savings and Loan v. Green.*

Connecticut TIL, Robinson is not entitled to recovery under Connecticut law.[8]

## B. *Robinson's Claims For Setoff Under Federal TIL.*

 Robinson has asserted numerous violations of the Federal Truth In Lending Act. Olin responds that Robinson may not seek a setoff for TIL violations because Olin's claim is not against Robinson personally, but only against Robinson's property that is subject to a lien. However, the Bankruptcy Code permits the allowance of a "claim or *interest,*" 11 U.S.C. § 502(a) (emphasis added), and allows the debtor to object that the claim is unenforceable against the debtor's property. 11 U.S.C. § 502(b). Because the lien is unenforceable to the extent that Robinson is entitled to a setoff against the lien for TIL violations, she may assert her TIL claims in this adversary proceeding. *In re Dunne*, 407 F.Supp. 308 (D.R.I., 1976); *In re Hanna*, 31 B.R. 424 (Bkcy.E.D.Pa.1983); *Connecticut Bank and Trust Co. v. Ossen*, Civil No. H–77–320 (D.Conn.1978).

Robinson alleges numerous violations of the Federal TIL in her objection to Olin's secured claim. For convenience of discussion these will be dealt with in three catagories: first, that the form and descriptions of the disclosure statement are confusing and inaccurate; second, that a clause imposing liability on the debtor for attorney's fees in event of default is not disclosed as a penalty; and third, that the disclosure does not follow federal regulations concerning prominence of type face.

## 1. *Confusing and Misdescribed Disclosure Statement*

The disclosure statement used by Olin in its loan arrangement with Robinson is contained in its security agreement. Robinson states that a few typographical errors, the description of the collateral, a statement of the secured party's rights, and the general format of the disclosure cause the disclosure statement to be inaccurate and confusing in violation of federal regulations. She also asserts that the security agreement purports to extend to "all additions, improvements, and accessories now or hereafter attached" to the Buick Regal. Robinson claims that since, by virtue of Conn. Gen.Stat. § 42a–9–204(2), there is a ten day limitation on attachment of a security interest in after-acquired property, the security agreement misrepresents the extent of Olin's collateral.

 Unfortunately Robinson ignores that portion of ¶ 42a–9–204(2) that excepts "accessions" from the ten day limitation. Section 42a–9–314 defines accessions as goods "installed or affixed" to other goods. Although the words used by Olin do not track the language of the statute, it cannot be said that on their face those words so misdescribe Olin's security interest as to give rise to a TIL violation.

 Robinson's other objections to the typographical errors, descriptions, and format of the security agreement do not establish clear violations of the Federal TIL.[9] Although a more careful drafter or

---

8. The parties do not dispute the fact that Olin is a federally-chartered institution.

9. Examples of claimed Federal TIL violations include the use of a dollar sign ($) rather than a number sign (#) before the serial number of the Buick Regal, misspelling of "Regal Limited" as "Rega Limited," and placing the vehicle description "Color Silver Wine" directly below the vehicle identification in a box titled "other collateral." See appendix. It is difficult to imagine a person who has just purchased a silver-wine Buick Regal being misled by these imperfections.

Robinson also asserts that paragraph 4 on the reverse side of the security agreement misdescribes Olin's rights by stating that "[a]ll rights

and remedies of SECURED PARTY are cumulative and not alternative...." Robinson claims that section 42-98(h) of the Connecticut General Statutes requires Olin to make an election of remedies, so that the description of its right is inaccurate. Paragraph 4 is clear in stating that Olin's remedies are limited to those available under law. Furthermore, section 42-98(h) does allow a creditor to choose among available remedies, and also allows a creditor to obtain a deficiency judgment after repossessing a motor vehicle in some circumstances. Therefore, Robinson's claim that paragraph 4 misdescribes Olin's rights is without foundation.

Robinson's claim that paragraph 7 misdescribes Olin's rights is also erroneous. Section

typist might have prepared a better document, the Truth in Lending Laws do "not require perfect disclosure, but only disclosure which clearly reveals to customers the costs of credit." *Gambardella v. G. Fox & Co.*, 716 F.2d 104, 118 (2d Cir.1983). The disclosure statement used by Olin, while not perfect, is adequate to prevent confusion or misleading of any debtors. *See Gilbert v. Atlantic Richfield*, Civil No. 15635 (Lumbard, J., 1978).

### 2. *Non-disclosure of Attorney's Fees as Penalty.*

 Robinson claims that the security agreement clause stating that Robinson could be held liable for "attorney's fees not to exceed the amount allowed by law" in the event that the loan is referred for collection is a penalty clause that must be disclosed under the Federal TIL. It is true that disclosure of such an attorney's fee provision is required if it is automatically imposed, 12 C.F.R. § 226.8(b); *Vega v. First National Federal Saving & Loan Ass'n of Detroit*, 622 F.2d 918, 921 (6th Cir.1980). However, if assessment of attorney's fees is not automatic, but is conditioned upon employment of an attorney to collect the debt, the attorney's fee provision is not a penalty subject to disclosure as such. *Id; Anderson v. Southern Discount Co.*, 582 F.2d 883 (4th Cir.1978).

 The attorney's fee clause in the security agreement is limited to the amount allowed by law and will apply only if the account is referred for collection. Connecticut statutes relating to such attorney's fees provisions make clear that they are not to be construed as penalties, Conn.Gen. Stat. § 49-7, and that the attorney's fees allowed shall be limited to 15% of the amount due and payable when the contract is actually referred for collection. Conn. Gen.Stat. § 42-91. The wording of the clause, and the applicable law make clear that imposition of attorney's fees is not automatic, but will only apply upon actual

referral to an attorney. Such a clause does not require disclosure as a penalty under the Federal TIL. *See* 12 C.F.R. Part 226, Supp. 1, § 1(*l*)(1) (disclosure of fees imposed for actual collection costs are not required).

### 3. *Improper Type-Face.*

 Robinson's third allegation of a violation of the Federal TIL involves the type-face used on Olin's disclosure form. Federal regulation requires that the words "Finance Charge" and "Annual Percentage Rate" shall be more conspicuous than other required terminology. 12 C.F.R. § 226.6(a) (1981). Robinson points out that the word "collateral" in the margin, identifying the box in which the property subject to the security agreement is described, is in a larger type-face than the words "finance charge" or "annual percentage rate." The regulations, however, do not make any specifications as to type-face; the only requirement is that the words be more "conspicuous." The size of type-face alone does not determine whether a required disclosure is "conspicuous." The location of the disclosure, and the manner in which it is set off from other information, are also determinative. *See Hartford Federal Savings & Loan Ass'n v. Green*, 36 Conn.Sup. 506, 510, 412 A.2d 709 (App.Div.1979) (disclosure set out in an "attention-getting" location is conspicuous). The words "finance charge" and "annual percentage rate" on the security agreement in question are centrally located in large letters among the other items disclosing cost of credit. The word "collateral", while in slightly larger type, is located above the financial disclosure information, in the extreme left margin, and written on its side. Viewing the document as a whole, the word "collateral" is not as conspicuous as the words "finance charge" and "annual percentage rate."

Furthermore, the regulations referred to by Robinson mandate that the words "fi-

---

42-83(1) of the Connecticut General Statutes makes clear that remedies under the Uniform Commercial Code are available to a secured

party. Paragraph 7(d) does not purport to terminate Robinson's interest in her personalty.

nance charge" and "annual percentage rate" be more conspicuous than other required *"terminology."* 12 C.F.R. § 226.-6(a) (emphasis added). An examination of § 226.8 shows that certain terms must be used on a disclosure statement. The word "collateral" is not among the required terms. Therefore, Olin would not necessarily have violated the regulations even if the word "collateral" had been more conspicuous than required terms.

A careful examination of the security agreement shows that while imperfections exist, none of these imperfections, either separately or cumulatively, are confusing or misleading, and do not warrant a finding of Federal TIL violations.

Therefore, summary judgment is denied as to all of plaintiff's claims. Furthermore, the court notes that no material issues of fact would prevent entry of summary judgment in favor of defendant. The parties may submit briefs on this question, no later than October 30, 1984.

SO ORDERED.

## EXHIBIT B

### SECURITY AGREEMENT

CAROLYN E. ROBINSON 219 STARR STREET N HAVEN, CT.

hereinafter called "Debtor"; said term "Debtor" to be read as if in the plural where more than one debtor is a party hereto), for valuable consideration, receipt whereof is hereby acknowledged, hereby grants to

| NOTE NUMBER | 1215 | 10/20/1978 | ACCOUNT NUMBER |

OLIN UNITED NUCLEAR FEDERAL ..................................... Credit Union

275 WINCHESTER AVENUE NEW HAVEN, CT. 06511 789-5994

(hereinafter called the secured party) a security interest in the property hereinafter described together with all additions, improvements and accessories now or hereafter attached thereto, the proceeds coming into the possession of debtor because of any disposition or sale of the property, hereinafter described, and if farm crops, the products thereof, growing or to be grown on the premises indicated below within one year from the date hereof, (hereinafter called the collateral) to secure the repayment to the secured party of its loan to the debtor evidenced by the debtor's promissory note of even date herewith in the principal amount of $ 7939.00 and any extensions or renewals thereof.

NOTICE TO DEBTOR: You have granted a security interest in the following collateral, any additions, accessories and improvements thereto, and proceeds thereof to secure repayment of a loan of even date herewith to this Credit Union.

| TITLED VEHICLE ► | MAKE | YEAR | MODEL | BODY STYLE | | VEHICLE OR ENGINE NUMBER |
|---|---|---|---|---|---|---|
| | BUICK | 1979 | REGA LIMITED | 2 DR. | $ | 4M47A9G117299 |

OTHER COLLATERAL

COLOR SILVER WINE

All shares and deposits and payments and earnings thereon which the debtor now has or hereafter may have in this Credit Union.

NOTICE TO DEBTOR: If it is improper for this credit union or any of its officers or employees to require you to deal with a particular insurance company, agent or broker as the purchase of any policies of insurance, You are entitled to the company, agent or broker from whom any required insurance coverage will be purchased if the agreement covering automobile insurance included therein, if any, does not provide coverage for personal liability and property damage caused to others.

DEBTOR HEREBY WARRANTS AND COVENANTS THAT:

The collateral is bought or used primarily for

☐ Personal, family or household purposes ☐ Agricultural purposes ☐ Business use and, if checked here ► ☐ is being acquired with the proceeds of the note or notes, the check for which secured party may make payable to the debtor and seller, or may disburse directly to the seller of the collateral.

(B) The collateral will be principally used, or if a motor vehicle will be stored when not in use, at _____ STATE _____ NO. AND STREET _____

(C) If the collateral is bought or used primarily for business use, debtor's principal place of business in said state (if any) is that shown at the beginning of this agreement; and all other places of business in said state outside the town or city mentioned in the previous clause are located as follows:

(D) The following, is the legal description of real estate on which farm crops are growing or to be grown, or to which collateral is to be attached.

and the name and address of the record owner is

| 1. Proceeds | $ 7939.00 | 5. FINANCE CHARGE (Interest Only) When Loan Repaid on Schedule | $ 1525.64 | 9. ANNUAL PERCENTAGE RATE | % |
|---|---|---|---|---|---|
| 2. Insurance Coverage Cost | $ XX | 6. Total of Payments (Sum of 4 & 5) | $ 9464.64 | 10. Credit Union may require immediate full payment of loan in the event of any late payment. You have agreed to pay cost of collection including attorney's fees not to exceed the amount allowed by law if loan referred for collection. | |
| 3. Other Charges | $ NONE | 7. To be repaid in a first installment of | $ 197.18 | 11. This loan may be prepaid, at any time, without penalty. In the event of such prepayment, FINANCE CHARGE will be applied only as earned on the unpaid principal balance. There is no unearned FINANCE CHARGE. | |
| | | and monthly/ 47 installments of A total of 48 installments. | $ 197.18 | | |
| 4. Amount Financed (Sum of 1, 2, & 3) | $ 7939.00 | 8. The First Installment to be Paid on | DATE 11/10/1978 | 12. Inquiries relating to billing errors may be directed to the Credit Union's address and telephone number as given above. | |

This agreement includes all the provisions set forth on the reverse side hereof, the same being incorporated herein by reference, both sides hereof collectively constituting this agreement. Debtor hereby acknowledges receipt of a copy of this agreement at the time of signing and of all other documents required to be signed by him.

SECURED PARTY ► OLIN UNITED NUCLEAR FEDERAL Credit Union BY _Rose Mury_

WITNESS _a. Hoyden_ DEBTOR X _Carolyn E. Robinson_ (L.S.)

WITNESS _____ DEBTOR X _____ (L.S.)

## SET FORTH ON THE FRONT SIDE HEREOF:
### AGREEMENTS OF DEBTOR

1 DEBTOR hereby warrants and covenants that he is the sole owner of the Collateral and that there are no liens or encumbrances of any kind thereon or on any part thereof; that he has good right to grant the aforesaid security interest; that he will keep the Collateral free of all liens and other charges; that he will pay all taxes thereon promptly when due, that he will not illegally use or secrete the same; that SECURED PARTY may examine and inspect the Collateral at any reasonable time; and that the entire proceeds of the loan will be used exclusively for the purposes set forth in the application therefor.

2. DEBTOR will maintain the Collateral in good repair, and be responsible to SECURED PARTY for any loss or damage thereto; he will maintain and pay promptly all premiums for insurance coverage on the Collateral against fire (including extended coverage), theft and such other risks as SECURED PARTY may require, and in the case of a motor vehicle, collision, in form, for a term and issued by an insurance carrier satisfactory to SECURED PARTY, the loss under each policy to be payable to SECURED PARTY and DEBTOR, as their interests may appear and such policies to provide for ten days minimum written cancellation notice to SECURED PARTY. DEBTOR will lodge such policies or certificates thereof with SECURED PARTY. DEBTOR hereby requests all insurance carriers involved to pay all insurance claims directly to SECURED PARTY, and appoints SECURED PARTY attorney-in-fact to collect the same on his behalf. DEBTOR agrees that in the event of his failure to secure and maintain the insurance herein referred to, SECURED PARTY may secure and/or pay for such insurance, and all sums advanced for such purposes shall be added to the indebtedness secured by this Agreement.

3. DEBTOR will not sell, lease, encumber, lend or otherwise dispose of the Collateral without the prior written consent of the SECURED PARTY.

### DEFAULT BY DEBTOR

4. In the event of any default by DEBTOR, SECURED PARTY may pursue any legal remedy available to collect any sums owing hereunder, to enforce its right to possession of the Collateral, and to enforce any and all other rights or remedies available to it and no such action shall operate as a waiver of any other right or remedy of SECURED PARTY under the terms hereof, or the law. All rights and remedies of SECURED PARTY are cumulative and not alternative, and no waiver of any default shall operate as a waiver of a subsequent default.

5. The DEBTOR shall be in default under the terms of this Agreement:

 a. Upon default in whole or in part of any payment or payments due under any promissory note or indebtedness secured by the terms of this Agreement.

 b. If any warranty, representation, or statement made or furnished to SECURED PARTY by or on behalf of the DEBTOR proves to have been false in any material respect when made or furnished.

 c. Upon the loss, theft, substantial damage, destruction, sale or encumbrance to or of any of the Collateral or the making of any levy, seizure or attachment thereof or thereon.

 d. Upon the insolvency or bankruptcy of the DEBTOR, or the appointment of a receiver over any of his property, or the institution of any proceeding for the liquidation of the debts of the DEBTOR in any State or Federal Court.

 e. Upon the death or termination of existence of DEBTOR or any co-maker or guarantor of any note, or loan secured hereby.

 f. Upon removal of the Collateral from the place of keeping as herein designated by the DEBTOR or any third party without written consent of the SECURED PARTY.

 g. In the event of the falsity or upon the breach of any of the representations, warranties or covenants set forth in this Agreement or the loan application. Failure of SECURED PARTY to receive the certificate or certificates of title to any motor vehicle comprising the Collateral or a part thereof properly endorsed with the security interest of the SECURED PARTY within the time normally required by the Commissioner of Motor Vehicles to effect such endorsement (plus the time required for forwarding and return) shall also constitute an event of default hereunder.

 h. When funds are loaned for the acquisition of specified Collateral, failure of the DEBTOR to acquire the specified Collateral with the loan proceeds.

### REMEDIES OF SECURED PARTY

6. In case of default on said note, though unmatured, or under this Agreement the SECURED PARTY may at its option set off and apply without notice, and without first resorting to any other collateral; all share accounts of all makers and endorsers pledged to secure said note.

7. Upon any such default and at any time thereafter, SECURED PARTY may declare all obligations secured hereby immediately due and payable and shall have the remedies of a SECURED PARTY under the Uniform Commercial Code. Thereafter:

 a. SECURED PARTY may require DEBTOR to assemble the Collateral and make it available to SECURED PARTY at a place to be designated by SECURED PARTY which is reasonably convenient to both parties and may without notice or demand and without legal process enter upon the premises of DEBTOR and take possession of the Collateral on said premises, or wherever found.

 b. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, SECURED PARTY will give DEBTOR reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made. The requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of DEBTOR shown at the beginning of this Agreement at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling or the like shall include such reasonable attorney fees and expenses as may be legally permitted.

 d. DEBTOR agrees that SECURED PARTY or its agents in taking possession of any vehicle after default may also take possession of any personal property therein. If during said repossession, personal property within the vehicle is seized such property shall be held by the SECURED PARTY or its agents for a period of 48 hours after such seizure and if the DEBTOR does not within that time deliver to the SECURED PARTY a written request for said property same shall be deemed abandoned by the DEBTOR.

### GENERAL

8. This Agreement, any financing statement or amendments thereof, any continuation statement, termination statement, statement of release of Collateral, and statement of assignment may be produced in as many counterparts through carbon impression or imprintation or other methods, and may be executed through signature of the top document and through carbon or other simultaneous impressions or imprintation of the succeeding duplicates thereof. Each of such documents so prepared and executed shall be deemed fully executed duplicate originals.

9. DEBTOR agrees with SECURED PARTY that this Agreement shall bind and inure to the benefit of the parties hereto and their respective executors, administrators, successors, heirs and assigns; and that the word "DEBTOR" as used herein and all pronouns referring thereto shall include masculine, feminine and/or neuter gender, singular or plural, as the context may require.

10. If there be more than one DEBTOR, their obligations hereunder shall be joint and several.

11. DEBTOR declares that he has read this Agreement and said note of even date herewith and that he understands the terms and purport of the same and acknowledges receipt from SECURED PARTY of a copy of all documents signed by him in order to obtain the loan described herein, and agrees that this Agreement and said note contain the entire agreement between the parties.